Possession of controlled substances (heroin and marijuana); sentence: fifteen years imprisonment.
On the morning of June 7, 1979, Baldwin County Deputy Sheriff Roland Howell received a telephone call from the manager of Woody's Motel concerning illegal drugs. The manager informed Deputy Howell that while one of his maids was cleaning a motel room she discovered a suitcase under a bed that she believed to contain drugs. Howell was a narcotics agent for the Sheriff's Department.
Deputy Howell arrived at Woody's Motel shortly after 11:00 a.m. Woody's Motel is located on Battleship Parkway (the causeway) in Baldwin County. The manager advised Deputy Howell that the daily check-out time for the motel is 11:00 a.m. The manager did not believe the people who had stayed in the room in question (No. 10) were coming back because the room did not appear to have been slept in and no money had been received by him for an additional day's rental. He then invited Deputy Howell to observe the suitcase in Room No. 10. Once inside the room, the manager pulled the suitcase out from under the bed, and Deputy Howell observed a plastic bag containing plant material that appeared to be marijuana sticking out the side of the suitcase. Howell instructed the manager to shove the suitcase back under the bed and they left. Deputy Howell testified that a casual look of the room revealed no articles of clothing or anything else.
At approximately 11:35 a.m., Jacob McCraney, Beverly Ann Russell, and an unidentified male drove up to the motel. They proceeded to the office and requested to rent the same room (No. 10) they had rented the previous day and also requested an adjoining room (No. 11). Charles Thomas registered for No. 10 and the appellant registered for No. 11.
Meanwhile, Deputy Howell along with Officers Bobby Stuart, Walter Crook, and Jim Anderson had set up surveillance on the motel. They observed the three subjects take clothing and other "stuff' into both rooms from the automobile. Shortly thereafter the appellant and the other male left in the automobile heading west toward Mobile. Beverly Ann Russell stayed in Room No. 11 while the others were gone. *Page 104 
The appellant and the other male returned to the motel at approximately 2:00 p.m. The appellant went into Room No. 11. All three subjects frequently went back and forth between the two rooms. Deputy Howell testified that they appeared to be nervous and "very skiddish acting." They would occasionally come to the doors of the rooms and look up and down the walkway.
At approximately 3:45 p.m., the two male subjects left the room and walked toward the automobile. One of the subjects was carrying a brown paper bag which he appeared to be trying to hide. They put the bag in the trunk and left. About one mile down the road, Deputy Howell and the other officers stopped the vehicle. The appellant was a passenger in the vehicle. The officers identified themselves to the two males, stated they had reason to believe drugs were in the automobile, and asked for permission to look in the automobile. Consent was given by the two occupants. A search of the trunk revealed a paper bag containing smaller paper bags of plant material, later identified to be 71.5 grams (2.52 oz.) of marijuana. The appellant and the other subject were placed under arrest and taken back to the motel.
During the surveillance of the motel and before the two male subjects had left the motel for the last time, Deputy Howell had contacted Assistant District Attorney Thomas Norton in reference to obtaining search warrants for Rooms No. 10 and 11. Upon returning to the motel after making the arrests, the search warrants were delivered to Deputy Howell. The warrants were delivered shortly after 4:00 p.m. and executed at approximately 4:40 p.m. Prior to the execution of the search warrants, Beverly Ann Russell was lured out of Room No. 11 on a pretext.
A search of Room No. 10 revealed approximately five pounds of marijuana recovered from the suitcase. From Room No. 11 approximately two ounces of heroin was recovered.
Baldwin County Chief Investigator Bobby Stuart testified that Charles Thomas and the appellant had two adjoining rooms (Nos. 207-208) rented at the Holiday Inn — East on Battleship Parkway at the same time they had rooms rented at Woody's Motel. He picked up their receipts for the rooms on June 7, 1979, at approximately 1:00 p.m. just minutes after they checked out.
This case was tried without a jury. There was no motion to exclude the evidence at the end of the State's case in chief, no request for the affirmative charge, and no motion for a new trial, thus the sufficiency of the evidence is not reviewable.Youngblood v. City of Birmingham, Ala.Cr.App., 338 So.2d 526
(1976).
 I
The appellant contends on appeal that the affidavits in support of the search warrants for the motel rooms failed to state sufficient probable cause for the issuance of the warrants. The appellant did not raise the sufficiency of the affidavits and warrants either in his pretrial motion to suppress or at the hearing on the motion to suppress. As this issue has been raised for the first time on appeal, it is not subject to review. Slinker v. State, Ala.Cr.App.,344 So.2d 1264 (1977). Any attack on the affidavits or warrants could only be inferred and would be collateral to appellant's contention that the initial, warrantless entry into Room No. 10 tainted all further police actions. We disagree. The initial entry into Room No. 10 was not illegal. Our reasons for this conclusion are set out in Section III, infra.
 II
The appellant in his motion to suppress, at the hearing on the motion and on this appeal, contends the warrantless search of the automobile lacked probable cause. However, the threshold question that we must address that was not addressed in the motion or at the hearing is whether the appellant had standing to challenge the search. *Page 105 
The appellant was a passenger in the automobile. He has asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized. The United States Supreme Court in Rakas v. Illinois, 439 U.S. 128,99 S.Ct. 421, 58 L.Ed.2d 387 (1978), has specifically rejected the "target" theory of standing which, "would in effect permit a defendant to assert that a violation of the Fourth Amendment rights of a third party entitled him to have evidence suppressed at his trial." Fourth Amendment rights are personal rights which may not be vicariously asserted. The burden was on the appellant to establish that his own Fourth Amendment rights were violated by the challenged search and seizure. The trunk of an automobile is not an area in which a passenger would normally have a legitimate expectation of privacy. Rakas v.Illinois, supra. We, therefore, do not believe that the instant disputed search and seizure has infringed an interest of the appellant which the Fourth Amendment was designed to protect.
Jones v. United States, 362 U.S. 257, 80 S.Ct. 725,4 L.Ed.2d 697 (1960), established a rule of "automatic" standing to contest an allegedly illegal search where possession of the seized evidence is itself an essential element of the offense for which one is charged.[1] This ruling came about because of the dilemma faced by defendants in possessory crimes of coerced self-incrimination. Although the automatic standing rule has not been directly overruled, we believe the dilemma for which it was created to overcome has been eliminated by the later decisions of Simmons v. United States, 390 U.S. 377,88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), and Brown v. United States,411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973).[2] Quoting fromBrown, supra:
 ". . . Mr. Justice Frankfurter, writing for the Court in Jones, emphasized the `dilemma' inherent in a defendant's need to allege `possession' to contest a seizure, when such admission of possession could later be used against him. Id., at 262-264, 80 S.Ct., at 731-732. Mr. Justice Frankfurter quoted the words of Judge Learned Hand:
 "`Men may wince at admitting that they were the owners, or in possession, of contraband property; may wish at once to secure the remedies of a possessor, and avoid the perils of the part; but equivocation will not serve. If they come as victims, they must take on that role, with enough detail to cast them without question. The petitioners at bar shrank from that predicament; but they were obliged to choose one horn of the dilemma.' Connolly v. Medalie, 58 F.2d 629, 630 (CA2 1932).
 "The self-incrimination dilemma, so central to the Jones decision, can no longer occur under the prevailing interpretation of the Constitution. Subsequent to Jones, in Simmons v. United States, supra, we held that a prosecutor may not use against a defendant at trial any testimony given by that defendant at a pretrial hearing to establish standing to move to suppress evidence. 390 U.S., at 389-394, 88 S.Ct., at 973-976. For example, under the Simmons
doctrine the defendant is permitted to establish the requisite standing by claiming `possession' of incriminating evidence. If he is granted standing on the basis of such evidence, he may then nonetheless press for its exclusion; but, whether he succeeds or fails to suppress the evidence, his testimony on that score is not directly admissible against him in the trial. Thus, petitioners in this case could have asserted, as to the pretrial suppression hearing, a possessory interest in the goods at Knuckles' store without any danger of incriminating themselves. . . ." (411 U.S. 227-228, 93 S.Ct. 1568-1569)
In Rakas v. Illinois, supra, we find the following: *Page 106 
 "Conferring standing to raise vicarious Fourth Amendment claims would necessarily mean a more widespread invocation of the exclusionary rule during criminal trials. The Court's opinion in Alderman, [394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176] counseled against such an extension of the exclusionary rule:
 "`The deterrent values of preventing the incrimination of those whose rights the police have violated have been considered sufficient to justify the suppression of probative evidence even though the case against the defendant is weakened or destroyed. We adhere to that judgment. But we are not convinced that the additional benefits of extending the exclusionary rule to other defendants would justify further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth.' 394 U.S., at 174-175, 89 S.Ct., at 967.
 "Each time the exclusionary rule is applied it exacts a substantial social cost for the vindication of Fourth Amendment rights. Relevant and reliable evidence is kept from the trier of fact and the search for truth at trial is deflected. See United States v. Ceccolini, 435 U.S. 268, 275, 98 S.Ct. 1054, 1059, 55 L.Ed.2d 268 (1978); Stone v. Powell, 428 U.S. 465, 489-490, 96 S.Ct. 3037, 3050, 49 L.Ed.2d 1067 (1976); United States v. Calandra, 414 U.S., [338] at 348-352, 94 S.Ct., [613] at 620-622, [38 L.Ed.2d 561]. Since our cases generally have held that one whose Fourth Amendment rights are violated may successfully suppress evidence obtained in the course of an illegal search and seizure, misgivings as to the benefit of enlarging the class of persons who may invoke that rule are properly considered when deciding whether to expand standing to assert Fourth Amendment violations." (99 S.Ct. 427)
We believe the danger of coerced self-incrimination was eliminated by the decision of Simmons v. United States, supra. The appellant has asserted none of the following:
1. A property interest in the automobile searched.
2. A possessory interest in the automobile searched.
3. An interest in the property seized.
4. A legitimate expectation of privacy in the area of the automobile searched.
Therefore, the appellant has no standing to contest the search.
Even if the appellant had proper standing to challenge the search, there are other reasons that his contention lacks merit. First, we believe the officers had probable cause to search the automobile. During the surveillance of the motel, the officers had reasonable cause to believe that marijuana was located in Room No. 10 because of the personal observation of Deputy Howell. Within one hour after the three subjects had let the rental of Room No. 10 expire, they returned to rent the very same room and an additional room. It was also learned during the course of the surveillance that the subjects had two other rooms rented at a different motel on the same day.
The fact that the three subjects went back and forth between the rooms acting suspiciously and carried a paper bag to the automobile would not by itself constitute probable cause for a search. But when all the circumstances are taken together as a whole, coupled with the experience of the officers in investigating narcotics, we believe the officers had probable cause to believe illicit activity was taking place. When the appellant and the other subject left in the automobile, the officers had not yet received the search warrant they had requested. This was an emergency situation in which the officers had to act without delay. Sufficient exigent circumstances existed coincidental with probable cause to stop and search the vehicle. See: Daniels v. State, 290 Ala. 316,276 So.2d 441 (1973); Rickman v. State, Ala., 361 So.2d 28
(1978).
Additionally, both occupants of the automobile consented to the search. Although the only evidence of consent was given by *Page 107 
Deputy Howell, this evidence was never contested or objected to either at trial or on appeal.
 III
At the suppression hearing hearing, the appellant objected to the original search of Room No. 10 without a warrant that was conducted by Deputy Howell shortly after 11:00 a.m. on June 7, 1979. He contends that any evidence later discovered was a direct result of this search and should have been excluded from evidence. He cites Duncan v. State, 278 Ala. 145, 176 So.2d 840
(1965) for the proposition that a person's motel room is protected against unreasonable searches and seizures. We agree. But in this case the room had been abandoned at the time of the search. The search was at the instigation and approval of the manager of the motel. A manager of a motel has proper charge of the rooms during the times they are not rented. For additional reasons stated in Part II of this opinion, the appellant has no standing to object to that search.
AFFIRMED.
All the Judges concur.
[1] This rule allows one to assert the Fourth Amendment rights of another.
[2] Rakas v. Illinois, supra, partially overruled Jones, supra, but the court there stated they did not have occasion to decide whether the automatic standing rule was made unnecessary bySimmons, supra, and Brown, supra.