DeCARLO, Judge.
Receiving stolen property in the first degree; five years.
On January 3,1981 it was discovered that the Blue Bell manufacturing company in Hanceville in Cullman County had been burglarized. The plant had closed on December 19, 1980 for the Christmas holidays and was not scheduled to resume production until January 5, 1981. It was ascertained that approximately 150 dozen Wrangler and Rustler denim blue jeans and 46 dozen corduroy blue jeans, which were produced at the Hanceville plant, were missing.
The Hanceville plant did not distribute the jeans it manufactured directly to customers. Instead, all the jeans it manufactured were tied together with cord into bundles of twelve pairs to a bundle and shipped to Blue Bell’s distributing plant in Oneonta. From the Oneonta distributing plant the jeans were shipped to customers packed loosely in cartons. The jeans were never shipped from Oneonta to customers packaged as they were received from Hanceville in the string-tied bundles.
There had been no other burglaries or thefts from either the Hanceville or Oneon-ta Blue Bell plants for at least two years. The Rustler style jeans which were shipped from Oneonta to a customer was January 15, 1981. Both customers to whom the Rustler jeans were shipped were from out of State.
On February 3,1981, one month after the Hanceville burglary and theft were discovered, Agent Johnny Nesmith and Captain Davis of the Alabama Bureau of Investigation, Cullman County Investigator Ed Lee, Chief Longshore of Etowah County, two FBI agents and other law enforcement personnel went to Martin’s Menswear in Rainbow City in Etowah County looking for stolen Lee and Wrangler jeans. Elton Pierce and Joe Elekes, employees of Blue Bell, accompanied the officers to Martin’s Menswear. Appellant arrived at Martin’s Menswear approximately one hour after the law enforcement officers and was questioned by Captain Davis. Appellant told Captain Davis that he had a “few pair” of Lee jeans at his Jeans Plus store in Centre in Cherokee County. Captain Davis then asked appellant if the officers could go to Centre and look at his store. Appellant told the officers that he had one stop to make before going back to his store, but that he would meet them there in approximately an hour. After this conversation Chief Longshore called Cherokee County and requested that appellant’s Jeans Plus store be kept under surveillance. The sheriff of Cherokee County then instructed Cherokee County Deputy Sheriff Billy Ray to go out to the Jeans Plus store.
Around 2:00 P.M., Deputy Ray saw appellant’s son, Kenneth Watts, pull his red pickup truck from the side of the Jeans Plus store to the front of the building to a door which opened into a storage room. The pick-up truck was owned by Kenneth *131 Watts. Appellant had no interest in the vehicle. Deputy Ray next observed Kenneth Watts loading arm loads of string-tied bundles of Wrangler blue jeans onto his truck for approximately twenty to twenty-five minutes. After Kenneth Watts finished loading the bundles of blue jeans onto his truck, he attempted to drive off. Deputy Ray stopped him and told Watts he would have to “back the truck up.” Kenneth Watts got out of the truck and went back inside the Jeans Plus store.
Law enforcement officers who had been at Martin’s Menswear earlier, and Elton Pierce of Blue Bell arrived at appellant’s Jeans Plus store within fifteen to thirty minutes after Kenneth Watts had attempted to drive off with the Wrangler jeans. Appellant arrived a short time later. Appellant was read his Miranda rights and, after making a voluntary and intelligent waiver, made a voluntary statement.
Appellant stated that he had purchased the same Wrangler jeans his son had loaded onto the truck from George Hubbert in Payette for $5.25 per pair on January 9, 1981. Appellant stated that he paid Hub-bert cash for the jeans and did not get a receipt from him. Hubbert denied that he had sold the stolen jeans to appellant. Appellant further stated that he received the jeans from Hubbert in Guin in Marion County. Appellant testified that when he received the jeans in Guin, Hubbert and Max Maddox loaded them into his (appellant’s) van at the back of Maddox’s. Town and County Clothing store.
Appellant admitted that he had called his son and told him to “clean up the store” after he had talked with Officers Davis and Nesmith at Martin’s Menswear in Rainbow City. Appellant told his son to move the jeans from the Jeans Plus store and take them to appellant’s home to make room for “remodeling.”
After appellant’s statement was taken the officers and Mr. Pierce went back outside and began examining the blue jeans which Kenneth Watts had loaded on his truck. Nearly all of the jeans were tied in bundles with the factory machine tie used at Hanceville. Mr. Pierce picked up each bundle and looked at the “joker ticket” on the top and bottom pair of jeans in each bundle to make sure they had been manufactured in Hanceville. Mr. Pierce testified that the jeans had not been shipped by Blue Bell to a customer. Investigator Lee counted fifty-six dozen and five pairs of jeans as they were taken off Kenneth Watts’ pickup truck and loaded into other vehicles. The jeans were then transported to the investigation room at the Cullman County Sheriff’s Department from appellant’s Jeans Plus store. The jeans were later placed in a vault at the Cullman County Courthouse.
It was further ascertained from Mr. Pierce that thirty-five pairs of the jeans found at appellant's store were marked “unwashed.” It was explained that when jeans are shipped from the Hanceville plant to the Oneonta plant with the “unwashed” label on them, the jeans are then washed and relabeled “pre-washed” before the Oneonta plant ships them to customers. Jeans marked “un-washed” are never sold to customers before being prewashed and re-labeled.
I
Appellant argues that his receiving stolen property conviction should be reversed because the State failed to prove proper venue in Cullman County. Appellant maintains that at most the State proved that he paid for the jeans in Fayette County, received them in Marion County and was in possession of them in Cherokee County. Appellant denies that the State failed to link him with any unlawful acts in Cullman County, where he was indicted and convicted. We disagree with appellant’s arguments.
It is true that generally under Alabama Code § 15-2-2 (1975), the venue of all public offenses is in the county in which the offense was committed, unless otherwise provided by law. However, Alabama Code § 15-2-9 (1975) a special venue statute dealing with stolen property, which is applicable in this case, provides as follows:
*132 “When property is stolen in one county and carried into another, venue is in either county.”
The evidence shows conclusively that the property in question had been stolen in Cullman County and, further, that appellant was possessed of the stolen property. The plain wording of § 15-2-9 demonstrates, therefore, that venue for prosecutions involving that stolen property properly existed in Cullman County. Harper v. State, Ala.Cr.App., 395 So.2d 150 (1981).
II
Appellant alleges that the seizure of the stolen jeans from Kenneth Watts’ pickup truck was in violation of the Fourth Amendment because Deputy Ray did not have probable cause to believe the jeans were stolen at the time he made the seizure. There is no merit to this argument because at the threshold we are convinced appellant lacked standing to contest the validity of the search and seizure. This is so because, based on all the facts and circumstances, appellant did not have any legitimate expectation of privacy from governmental invasion in the area searched. United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).
As this court stated in Russell L. Collier v. State, Ala.Cr.App., 434 So.2d 298 [1981]:
“Persons charged with crimes of possession may only Claim the, benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated. Salvucci, supra; Rakas, supra. The burden rests on the defendant to prove not only that a search was illegal, but also that he had a legitimate expectation of privacy in the area searched. Rawlings, supra. ‘(A) prosecutor may, with legal consistency and legitimacy, assert that a defendant charged with possession of a seized item did not have a privacy interest violated in the course of the search and seizure.’ Salvucci, 100 S.Ct. at 2551.
“The automatic standing rule of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 5 L.Ed.2d 697 (1960), was specifically overruled in Salvucci, 100 S.Ct. at 2554. See also Rawlings, supra. The test of standing is found in Salvucci.
“ ‘The person in legal possession of a good seized during an illegal search has not necessarily been subject to a Fourth Amendment deprivation. As we hold today in Rawlings v. Kentucky, post, at 2556, legal possession of a seized good is not a proxy for determining whether the owner had a Fourth Amendment interest for it does not invariably represent the protected Fourth Amendment interest.’

“ ‘While property ownership is clearly a factor to be considered in determining whether an individual’s Fourth Amendment rights have been violated, see Rakas, supra, 439 U.S., at 144, n. 12 [99 S.Ct., at 431], property rights are neither the beginning nor the end of this Court’s inquiry. In Rakas, this Court held that an illegal search only violates the rights of those who have a legitimate expectation of privacy in the invaded place. Rakas, id, at 140 [99 S.Ct., at 430]. See also Mancusi v. DeForte, supra [392 U.S. 364, 88 S.Ct. 816, 19 L.Ed.2d 869].’
“As in Rakas, we find that the Jones standard (legitimately on the premises) ‘creates too broad a guage for measurement of Fourth Amendment rights’ and that we must instead gauge in a ‘conscientious effort to apply the Fourth Amendment’ by asking not merely whether the defendant had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched.’ Salvucci, 100 S.Ct. at 2552-3.”
The Salvucci test for standing is whether appellant had a legitimate expectation of privacy from governmental invasion in the area searched. Appellant’s claim of ownership of the jeans found on his son’s truck does not, standing alone, entitle him to challenge the search without some showing of his expectation of privacy.
*133 The appellant in this case was nowhere to be seen at the time Deputy Ray placed the' Jeans Plus store under surveillance or later when Deputy Ray stopped Kenneth Watts and effectively seized the jeans which were loaded in open view on the pick-up truck. Mr. Pierce from Blue Bell verified at the scene that the jeans on Kenneth Watts’ truck had been stolen from the Hanceville plant. While appellant did assert his “ownership” of the stolen jeans, the evidence is undisputed that Kenneth Watts owned the pick-up truck on which the jeans had been loaded. Appellant had no proprietary interest in the truck whatsoever. McCraney v. State, Ala.Cr.App., 381 So.2d 102 (1980). Moreover, Kenneth Watts’ jeans-laden truck was both loaded and seized in open view of the public. The jeans were in no way covered or concealed in any containers, but could be seen by anyone passing by the area. Thus, it cannot be seriously contended, under these facts, that appellant had any legitimate expectation of privacy in the area searched. Collier, supra.
III
Without question the State’s evidence was sufficient to prove beyond any reasonable doubt that appellant was guilty of receiving stolen property. Contrary to appellant’s argument, the State presented both direct and circumstantial evidence sufficient to prove every element necessary to sustain a conviction under Alabama Code § 13A-8-17 (Supp.1977). It is a well established principle that the requisite scienter for the crime of receiving stolen property may be inferred from the recent possession of the stolen goods. Belue v. State, Ala.Cr. App., 362 So.2d 1330 (1978). See also Alabama Code § 13A-8-16 (Supp.1977) (Commentary). Any conflicts in the evidence were resolved by the jury.
IV
Appellant next contends that Alabama Code § 13A-8-16(b)(3) (Supp.1979) is unconstitutional because it violates the due process clause and the privilege against self-incrimination. We disagree. In pertinent part § 13A-8-16 reads as follows:
“(a) A person commits the crime of receiving stolen property if he intentionally receives, retains or disposes of stolen property knowing that it has been stolen or having reasonable grounds to believe it has been stolen, unless the property is received, retained or disposed of with intent to restore it to the owner.

“(3) [If a person] Regularly buys, sells, uses or handles in the course of business property of the sort received, and acquired the property without making reasonable inquiry whether the person selling or delivering the property to him had a legal right to do so, this shall be prima facie evidence that he has the requisite knowledge or belief.”
During that portion of the trial court’s oral charge defining receiving stolen property in the first degree, the jury was given instructions which followed substantially the language of § 13A-8-16(b)(3), supra. Appellant contends that the wording of the above sub-section, in effect, placed a burden on him to prove that he had made a “reasonable inquiry” as to the legal right of the person from whpm he acquired the property to sell or deliver it to him. Appellant argues that the statutory presumption defined in § 13A-8-16(b)(3) thus required him to prove his innocence in violation of his privilege against self-incrimination. Based on long standing authority by the Supreme Court of the United States we disagree with appellant’s argument.
In Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925), the Supreme Court was required to review a statute making it an offense to conceal opium knowing it had been imported contrary to law that contained a statutory presumption clause which provided that possession by the defendant “shall be deemed sufficient evidence to authorize conviction unless the defendant shall explain the possession to the satisfaction of the jury.” 268 U.S., at 182, 45 S.Ct. at 471. The Supreme Court in Yee Hem held that the statute did *134 not violate due process rights, and, further, that the accused’s privilege against self-incrimination had not been infringed:
“The point that the practical effect of the statute creating the presumption is to compel the accused person to be a witness against himself may be put aside with slight discussion. The statute compels nothing. It does no more than to make possession of the prohibited article prima facie evidence of guilt. It leaves the accused entirely free to testify or not as he chooses. If the accused happens to be the only repository of the facts necessary to negative the presumption arising from his possession, that is a misfortune which the statute under review does not create but which is inherent in the case. The same situation might present itself if there were - no statutory presumption and a prima facie case of concealment with knowledge of unlawful importation were made by the evidence. The necessity of an explanation by the accused would be quite as compelling in that case as in this; but the constraint upon him to give testimony would arise there, as it arises here, simply from the force of circumstances and not from any form of compulsion forbidden by the Constitution.” 268 U.S., at 185.
Yee Hem, supra, was cited with approval in Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970). We find that the statutory presumption created by § 13A-8-16(b)(3), supra, was in no way conclusive upon the jury to convict appellant, but was rather permissible in nature. United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed. 658 (1965). The trial court’s oral charge in this case, when considered and construed as a whole and in connection with the evidence, demonstrates that the presumption was permissive. The burden of persuasion at all times remained with the State and was at no time shifted to appellant.
We have examined the record and find no error prejudicial to appellant. Therefore, the judgment of conviction by the Cullman Circuit Court is affirmed.
AFFIRMED.
HARRIS, P.J., and TYSON, J., concur.
BOWEN, J., dissents.