No. 59,979

STATE OF KANSAS, *Appellee*, v. TIM STRAYER, *Appellant*.

(750 P.2d 390)

Opinion filed February 19, 1988.

*James L. Pinkerton*, of Wichita, argued the cause and was on the brief for appellant. Appellant filed a *pro se* brief.

*Curtis E. Campbell*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

PRAGER, C.J.: This is a direct appeal by the defendant, Tim Strayer, from a jury conviction of possession of marijuana with the intent to sell (K.S.A. 1987 Supp. 65-4127b [b]). This prosecution arose following the seizure of a Cessna aircraft by United States Customs officials at the Cimarron, Kansas, airport on May 10, 1985. The State's evidence to prove defendant's possession of marijuana was overwhelming. The Cessna 310 twin-engine plane had been equipped with an electronic transponder installed by United States Customs officials by order of a United States District Magistrate.

During the evening of May 9, 1985, air traffic controllers near Midland, Texas, picked up the transponder code and notified Customs officials. A Customs plane took off from Albuquerque, New Mexico, to intercept the suspect aircraft. Another Customs crew flew out of El Paso equipped with Forward Looking Infared Radar (FLIR). The suspect plane was tracked north through Oklahoma and Kansas. At 12:24 a.m., air traffic controllers in Kansas City lost radar contact with the suspect plane. The last radar siting placed the plane at a position approximately 20 miles east of Garden City.

The Customs planes began to check airports near Garden City, and at 12:30 a.m., the FLIR detected a "hot," twin-engine plane on the ground at the Cimarron, Kansas, airstrip. The radar showed two people on the airstrip moving back and forth from the airplane to a nearby field.

One Customs plane landed and blocked the Cimarron runway and the Customs officials approached the aircraft. One of the agents observed defendant Strayer kneeling in the field with his hands in the air. Strayer was surrounded by shiny, plastic-wrapped bundles. Each of the bundles later proved to contain marijuana. Altogether, a total of 827 pounds of marijuana, with a street value of $660,000, was recovered. The pilot of the plane, David Keith Johnston, ran into the field and was not found for approximately one hour. Johnston later pled guilty and the case proceeded to trial against Strayer only.

In addition to the facts set forth above, the prosecution introduced evidence of statements made by Strayer at the scene in which he admitted unloading the marijuana with the expectation that it would be picked up by a truck. The only evidence offered by defendant Strayer was the testimony of the Gray County Sheriff, who testified that the aircraft involved was owned by David Keith Johnston and not defendant Strayer. In view of the strong case presented by the prosecution, it was not surprising that the jury convicted defendant Strayer of possession of marijuana with intent to sell. The defendant appeals.

Most of the issues raised by defendant on the appeal involve rulings by the trial court in which it denied defendant's motion to suppress all of the physical evidence in the case and all statements made by defendant Strayer on the morning he was

taken into custody. The defendant maintains, in substance, that the evidence which he sought to have suppressed was obtained as a result of an illegal search and seizure in violation of defendant's rights under the Fourth and Fourteenth Amendments to the United States Constitution and Section 15 of the Kansas Bill of Rights. Defendant argues that the acts of the United States Customs officials and the arresting officers constituted an unreasonable governmental restaint and an intrusion which infringed upon his reasonable expectations of privacy.

Defendant claims that the installation and placement of the transponder on the Cessna aircraft violated his constitutional rights. The evidence in the case showed that in January of 1985, Judge James Allen, United States Magistrate for the Western District of Tennessee, authorized the placement of a transponder for 90 days in a Beech aircraft owned by David Keith Johnston. That order was extended for another 90 days on April 11, 1985. Another transponder was subsequently placed on a Cessna aircraft owned by Johnston and it was this plane which was tracked to Cimarron, Kansas. Defendant argues that the original order authorizing the installation of a transponder in the Beech aircraft was without probable cause. We find this contention to be without merit.

The evidence was undisputed that the defendant had no independent ownership in the aircraft. Clearly, defendant had no reasonable expectation of privacy with regard to that plane. Thus, defendant has no standing to attack the validity of the original order. However, a review of the affidavit provided to the United States Magistrate, in our judgment, established probable cause to justify the installation of the transponder.

Defendant contends that subsequent orders for the installation of a transponder were not based upon probable cause. The order authorizing the installation of the transponder on the Cessna aircraft which was seized at Cimarron was based upon information from a confidential informant which contained allegations showing that Johnston and a man known only as Larry flew an aircraft to the Savannah, Tennessee, airport in October of 1984. Less than two weeks later, Larry Jeter piloted that plane and was killed when it crashed near Las Vegas with 300 pounds of marijuana aboard. Johnston then bought a Cessna plane for

$48,000 in cash and registered it in a fictitious name. Shortly thereafter, Johnston traded that plane for the Cessna which eventually landed in Cimarron. Evidence in the affidavit showed the Johnston had previous drug smuggling convictions and had associated with other drug dealers. In our judgment, there was probable cause to show that Johnston had engaged in drug smuggling through the use of small aircraft and that he would do so in the future. Two federal district magistrates concluded that the affidavit was sufficient to support probable cause. In our judgment, a review of the evidentiary affidavits supports that decision in light of the totality of the circumstances.

Although we have determined that there was probable cause for the installation of the transponder on the Cessna aircraft involved, we have concluded that the undisputed evidence shows that the defendant had no reasonable expectation of privacy sufficient for him to have standing to challenge the installation of the transponder. In *United States v. Alonso*, 790 F.2d 1489 (10th Cir. 1986), the court used a two-step analysis to decide whether the defendant had standing. Alonso was charged with possession and importation of marijuana after a DC-7 with 20,000 pounds of marijuana and a transponder aboard landed in the Utah desert. The court looked first to see if the defendant had an ownership interest and then if use of the transponder violated his Fourth Amendment rights. The court concluded that, absent proof of ownership, Alonso had no reasonable expectation of privacy with regard to the plane. The court also ruled that the use of a transponder to track aircraft was not an impermissible invasion of Alonso's rights. The court stated:

"The mode of inquiry employed in *United States v. Knotts*, 460 U.S. 276, 103 S. Ct. 1081, 75 L. Ed. 2d 55 (1983), has given rise to a bifurcated analysis which is appropriate to Alonso's transponder claim. The *Knotts* court treated the installation of the transponder as totally distinct from its use in tracking a suspect. *See also, United States v. Erickson*, 732 F.2d 788 (10th Cir. 1984). In *Knotts* the Supreme court held that 'a person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.' 103 S. Ct. at 185. The electronic beeper used in *Knotts*, enabling the government to track the defendant's automobile, revealed no more than could have been discerned by visual surveillance. As such, 'scientific enhancement' of visual surveillance of a suspect on public thoroughfares 'raises no constitutional issues which visual surveillance would not also raise.' *Knotts*, 103 S. Ct. at 1087.

"The rationale behind *Knotts* has been extended to airplanes:

" '*Knotts* teaches us here that monitoring signals from an electronic tracking device that tells officers no more than that a specific aircraft is flying in the public airspace does not violate any reasonable expectation of privacy. Because this is so, no Fourth Amendment violation results from such public detection. The movement of an airplane in the sky, like that of an automobile on a highway is not something in which a person can claim a reasonable expectation of privacy.' *United States v. Butts,* 729 F.2d 1514, 1517 (5th Cir. 1984); *see also, United States v. Bruneau,* 594 F.2d 1190 (8th Cir. 1979), *cert. denied,* 444 U.S. 847, 100 S. Ct. 94, 62 L. Ed. 2d 61 (1979); *Erickson,* 732 F.2d at 790." 790 F.2d at 1494.

In the case now before us, the only evidence in the record shows that Strayer's codefendant, Johnston, was the owner of the plane. Strayer offered no evidence whatsoever that he had any interest in the plane and thus had a reasonable expectation of privacy. The argument of the defendant that the question of standing was not raised in district court and, therefore, cannot be raised on appeal we find to be without merit. In *United States v. Hansen,* 652 F.2d 1374 (10th Cir. 1981), it was held that, although the standing argument was not raised in district court, it may be raised on appeal provided the prosecution did not raise contrary assertions in the lower court and where all of the facts available in the record are sufficient to show standing or lack thereof.

The ruling of *Alonso* is also important in this case because it holds that the monitoring of an electronic transponder in tracking an aircraft does not violate a reasonable expectation of privacy. In the present case, Strayer was an occupant in an airplane which was flying in public airspace followed by Customs officials. In *United States v. Knotts,* 460 U.S. 276, 75 L. Ed. 2d 55, 103 S. Ct. 1081 (1983), it was held that a person traveling in an automobile on a public thoroughfare has no reasonable expectation of privacy in his movements from one place to another. The *Alonso* court noted that the rationale had been extended to airplanes and that the monitoring of signals from an electronic tracking device that tells officers no more than that a specific aircraft is flying in the public airspace does not violate any reasonable expectation of privacy. Because this is so, no Fourth Amendment violation results from such public detection. Under the circumstances in this case, we hold that the installation of the electronic tran-

sponder on the Cessna and the monitoring of the transponder by Customs officials did not violate the defendant's constitutional rights or any reasonable expectation of privacy. We hold that the trial court did not err in overruling defendant's motion to suppress the evidence taken from the Cessna aircraft. In view of our holding on these issues, it is unnecessary to consider other issues raised by defendant involving his motion to suppress.

Defendant next maintains that his rights were violated when United States Customs agents landed at the Cimarron airport and blocked the runway. Defendant argues, in substance, that the Customs officials seized him without probable cause by blocking the exit of the Cessna aircraft. There is little doubt that the defendant was seized when the Customs plane blocked the runway and restrained his freedom. *State v. Epperson*, 237 Kan. 707, Syl. ¶ 3, 703 P.2d 761 (1985). The question is whether this seizure was a violation of defendant's rights.

K.S.A. 22-2402 (1) provides:

"Without making an arrest, a law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a crime and may demand of him his name, address and an explanation of his actions."

The record in this case supports a finding that the Customs agents had a reasonable suspicion that the defendant was involved in criminal activity. Air traffic controllers first picked up the transponder signal when the plane was near Midland, Texas. Customs agents scrambled to launch a plane, partly because the signal was received so close to the Mexican border. The controllers picked up the transponder as the plane flew towards and into Kansas. Information was radioed to the Customs agents who followed. When the plane went off radar 20 miles east of Garden City, Customs agents began searching nearby airports with radar. Within minutes, they observed two figures on the ground at the Cimarron airstrip running between the plane and a nearby field. Then the agents decided to block the runway. They did so based upon a reasonable suspicion that criminal activities were taking place. Under the circumstances, we find defendant's position on this point to be without merit.

The next point raised by the defendant on the appeal is that various statements made by the defendant after the seizure of the

plane should have been suppressed under the fruit of the poisonous tree doctrine. Because the seizure was legally made, this argument has little merit. However, defendant also claims that his statements were made in violation of his *Miranda* rights. The admissibility of the defendant's statements was ruled on by the trial court after a suppression hearing prior to trial. Many statements were ruled admissible, yet a few were ruled inadmissible. In *State v. Brown*, 235 Kan. 688, 691, 681 P.2d 1071 (1984), it was held that when a trial court conducts a full pretrial hearing on the admissibility of an extrajudicial statement by an accused, determines the statement was freely, voluntarily, and knowingly given, and admits the statement into evidence at the trial, the appellate court should accept that determination if it is supported by substantial competent evidence.

The record shows that when the defendant was first stopped at the Cimarron airport, Customs Agent Ward Olson asked, "Where is the other guy?" The defendant replied, "He ran that way, over towards those lights." Olson then saw a hat on the ground and asked the defendant "Is that yours?" Defendant told Olson, "No, it belongs to the other guy." Olson then handcuffed the defendant. The trial court admitted these statements, finding that there was no interrogation and the statements were not incriminating. The court also held that the questions were made to locate the second suspect. Both questions were asked to gather information about the immediate scene, not to compel defendant to explain his involvement. The statements did not incriminate the defendant and, at best, they implicated Johnston. Under Kansas law, a police officer may question a suspect for safety reasons. *State v. Roadenbaugh*, 234 Kan. 474, 673 P.2d 1166 (1983). Here, Olson knew a second person was involved based upon radar sightings of two figures moving back and forth between the plane and the field. Olson's questions stemmed from a concern for his safety and were, therefore, in our judgment not a form of interrogation.

After defendant was placed under arrest but not yet read his *Miranda* rights, Olson asked him why he was sweating so much. Olson was concerned about defendant's health. Defendant replied, "It's hard work unloading all that stuff. . . . You know, we got it all out of there in just a few minutes." Olson immedi-

ately read the defendant his rights. The trial court admitted the statement holding that there was no interrogation and that Olson was clearly concerned about defendant, who was middle-aged and overweight. In our judgment, that ruling was not error.

Once the defendant was read his rights, *he* began questioning the officers. He asked, "How did you get on us? . . . Did someone snitch on us?" A review of the record has caused us to conclude that a waiver of his *Miranda* rights was shown from defendant's own acts, words, and surrounding circumstances. Defendant stated that he understood his rights and could not discuss the specifics of his case with police, but that he wanted to ask some questions. He then engaged in a lengthy conversation with police, occasionally making incriminating statements. Under all of the circumstances, we hold that the trial court did not err in admitting the defendant's statements at the scene.

The next point raised by defendant is that the trial court erred in failing to disqualify Judge Jay Don Reynolds as the presiding judge in the case. Defendant complained that the judge had a social relationship with the prosecuting attorney. Defendant also complained of various rulings of Judge Reynolds during the course of the suppression hearing and alleged that the judge repeatedly interrupted defense counsel and used a sarcastic tone of voice. Judge Reynolds denied the defendant's first motion to disqualify, and the question of disqualification was transferred to Judge Don Smith, the administrative judge. Judge Smith then denied the motion on the basis of the insufficiency of the affidavits. Practically all of the objections made to Judge Smith had to do with previous rulings or decisions by Judge Reynolds during the course of the suppression hearing. Under K.S.A. 1987 Supp. 20-311d such allegations are not deemed legally sufficient for any belief that prejudice or bias exists.

Defendant argues that the proper standard for judicial disqualification is subjective, turning on whether the party reasonably believes that he cannot get a fair trial before the judge. The more recent cases on this issue hold that the standard to be applied in considering judicial disqualification is whether the charge of lack of impartiality is grounded on facts that would create reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself, or even, necessarily, in the

mind of the litigant filing the motion, but rather in the mind of a reasonable person with knowledge of all the circumstances. *State v. Griffen*, 241 Kan. 68, 72, 734 P.2d 1089 (1987). The defendant's argument that a subjective test should be applied is clearly without merit.

Using the *Griffen* analysis, we have concluded that Judge Smith correctly denied the motion to disqualify Judge Reynolds. A review of the record shows that Judge Reynolds was concerned about time delays, and occasionally urged counsel to complete their questioning. In our judgment, he acted fairly. As to Judge Reynolds's social acquaintance with the prosecutor, we find no basis for disqualification. In a rural judicial district, it is to be expected that the district judges will be well acquainted with the members of the bar, including the prosecutors. There was no evidence whatsoever that Judge Reynolds was biased as a result of his acquaintance with the prosecutor. We hold that the affidavits were not legally sufficient to show bias or prejudice on the part of Judge Reynolds.

Defendant's next point is that the trial court erred in permitting the State to introduce evidence of defendant's prior conviction in the State of Texas. The State's evidence showed that the defendant pled guilty to engaging in criminal activity in February 1982, in Hale County, Texas. In that case, it was shown that Strayer was the "kingpin" and "financier" behind an operation which brought 620 pounds of marijuana into Texas on board a small aircraft. The plane landed at night at a small municipal airport. By the time police discovered the operation, the marijuana had been loaded into a van. The defendant did not pilot the plane and was not present when the operation was discovered. However, the prosecution's evidence showed that the defendant financed the operation. We hold that this evidence was properly admissible to show the defendant's intent under our decision in *State v. Faulkner*, 220 Kan. 153, Syl. ¶ 10, 551 P.2d 1247 (1976). The possession of marijuana by the defendant was undisputed. Evidence of the prior conviction in a drug case was admissible to show defendant's intent to possess and also his intent to sell marijuana for a profit. We find no error in the trial court's ruling.

Defendant next contends that the trial court erred in failing to declare a mistrial after an attempt at jury tampering occurred.

The record shows that Judge Reynolds's secretary was offered a bribe and threatened during the trial. One of the jurors was offered a bribe and reported it to the court. The trial judge then spoke with each member of the jury individually, without revealing to them what had occurred. He specifically asked each juror if he was still able to deliberate fairly and come to an impartial verdict, and each said yes. The judge then sequestered the jury and ordered the defendant into custody until a verdict was reached. Defendant argues that the trial court erred in not immediately declaring a mistrial. The trial judge took positive steps to prevent the jury from being tainted and removed the juror. An alternate juror took the place of the removed juror. The jury was never advised that jury tampering had been attempted. After all of these steps were taken, counsel for the defendant did not ask for a mistrial and agreed the trial should continue. In his *pro se* brief, the defendant argues that the refusal of his defense attorney to move for a mistrial constituted incompetency of counsel. This point was never raised in the trial court and will not be considered on this appeal. Under all of the circumstances, we hold that the trial court handled the attempted jury tampering in a proper manner and there is no showing that the jury was in any way influenced by it. We find no error.

The final point raised by defendant is that the trial court erred in sentencing defendant without his counsel being present. The sentencing hearing was bifurcated. At the first hearing, defendant appeared with counsel and the court heard testimony about the defendant's prior criminal record. The next day, defendant appeared but his counsel refused to appear apparently due to a dispute over attorney fees. Judge Reynolds asked defendant what he wished to do and the defendant apologized to the court and stated, in substance, that if the court wanted to continue with the sentencing it could do so. The court imposed sentence stating specifically that the defendant would be given an opportunity to secure a lawyer and file a motion for reconsideration. Defendant agreed. The court then allowed the defendant to explain his involvement in the prior crime. The law is clear that an accused has a constitutional right to counsel at the sentencing stage in a criminal proceedings. *In re Habeas Corpus Application of Gilchrist*, 238 Kan. 202, 210, 708 P.2d 977 (1985). The

question presented here is essentially one of waiver to have counsel present for the sentencing. This is to be determined by the factual circumstances of each case. Effective waiver of counsel requires that the defendant be informed or have knowledge of his right to counsel. *State v. Daniels,* 2 Kan. App. 2d 603, 586 P.2d 50 (1978).

In the case now before us, the judge made no explicit statement to the defendant about his right to have an attorney present. However, the evidence is clear that the defendant knew his rights. He had secured several different attorneys during the course of the litigation. He had been involved in legal proceedings before, as evidenced by his prior record. This circumstance was noted in *In re Habeas Corpus Application of Gilchrist,* 238 Kan. 202. In the present case, defendant had previously had an extension of time granted so that defendant could have his out-of-state counsel present. Under all the facts and circumstances here, we have concluded that the defendant's statements to the court that he had no objection to proceeding with sentencing was a knowing and intelligent waiver of his right to have counsel at sentencing. Defendant was afforded an opportunity to file a motion for reconsideration of sentencing if he chose to do so. He filed no such motion. The defendant has in no way been prejudiced by the absence of counsel.

For the reasons set forth above, the judgment of the district court is affirmed.

LOCKETT, J., not participating.