PATTERSON, Presiding Judge.
The appellant, Bobby E. Jackson, was convicted for possession of marijuana, first degree, in violation of § 13A-12-213, Code of Alabama 1975, and was sentenced to six years’ imprisonment and fined $500.
The prosecution’s evidence established the following: Clay East, having been caught by Deputy William Gibson with a small amount of marijuana in his possession, offered to help Gibson make a case against someone dealing marijuana. They set up a controlled buy wherein East would accompany the appellant to Monroe Motor Court South and introduce him to an undercover officer who would buy two pounds of marijuana supplied by the appellant. While travelling in East’s vehicle toward the motel to meet the undercover agent, East and the appellant were stopped by officers of the Monroe County Sheriff’s Department. They were stopped because the officers had learned that the agent could not meet the appellant and East. A search of East’s vehicle produced a brown paper bag from the hatchback portion of the vehicle. This bag contained plastic bags containing smaller plastic bags of a green plant material that was later determined to be marijuana. The appellant’s fingerprints were found on six of the smaller plastic bags contained in the larger plastic bags.
I
The appellant raises three issues regarding the trial court’s denial of his motion to suppress the marijuana seized from East’s vehicle. We, however, shall consider them as two. First, the appellant contends that the information supplied by East and the details corroborated by the sheriff’s deputies were insufficient to create a reasonable suspicion justifying the investigatory stop of East’s vehicle and that East had not been proven to be a reliable informant. Necessary to our treatment of this issue is recitation of the facts presented to the trial court prior to its denial of the appellant’s *555 motion to suppress.[1]
Monroe County Sheriffs Deputy William Gibson testified as follows: After Gibson arrested Clay Kast for possession of marijuana, Kast told him that “he could help [him] with somebody else that was dealing marijuana.” Kast further explained to Gibson that he could set up a deal with the appellant, who lived in Castleberry, for one to two pounds of marijuana and that he could get the appellant to bring it into Monroe County.
A “month or more later,” Kast called the deputy on October 22, 1987, and they met at the intersection of Highways 84 and 21. Kast told him that he was going to Castle-berry to set up the deal for that night. Later that afternoon, Kast called Gibson and told him that “he had [the deal] set up,” that the appellant would bring approximately two pounds of marijuana to the Monroe Motor Court South where the appellant was to sell it to a truck driver, and that they would be traveling on Highway 84. After this call, Gibson recruited an undercover agent to pose as the truck driver. However, approximately 45 minutes before the transaction was to occur, the deputy was informed that the agent could not assist. He and other officers “set up” on Highway 84 around 8:00 p.m. to wait for the appellant and Kast. While waiting, Deputy Gibson received a radio message that, contrary to the plan that the two would be travelling in the appellant’s vehicle, they were in fact travelling in Kasf s vehicle. Shortly after 8:00 p.m., Kast’s vehicle came across the Conecuh County line into Monroe County. Gibson recognized the car as Kast’s vehicle, for he had previously met Kast in that vehicle. It was an older model Toyota hatchback automobile. The law officers stopped the vehicle, which Kast was driving; the appellant was the sole passenger. Gibson asked both to get out of the vehicle.
Sometime during their conversations, Kast had told Deputy Gibson that the appellant lived in Castleberry (this was confirmed by Gibson); that he had purchased “speed” from the appellant before; and that the appellant was working with the appellant’s brother, whom Kast named. Deputy Gibson knew that Kast was on probation for a prior felony conviction, possibly for burglary. During the interval between Kast’s arrest and the set-up, Kast had called and had arranged meetings with Deputy Gibson, and he had always kept his appointments. Kast was also “exact in the times he said he’d call [Gibson] and report in.” Kast had not given any information previously. His charge for marijuana possession had been nol-prossed by the time of trial.
Clay Kast testified as follows: After Deputy Gibson “caught” him with a “bag of marijuana containing approximately one-half ounce” he told the officer that he would try to find someone with at least a pound of marijuana. A couple of days later, he told Gibson that someone in Cast-leberry sent him to the appellant for two pounds. He had previously gotten “a couple of hits of speed from him in a bar.” He contacted the appellant and told him that he was supplying a truck driver with some marijuana to resell in California. The appellant replied that he could get two pounds of “the stuff,” but it would be later that afternoon. Kast told the appellant that he would talk to him later. Then, Kast contacted Gibson and told him that the appellant had two pounds, that he thought he would be able to get the marijuana from the appellant that afternoon, and that they would bring it over that night. He later talked to the appellant who told him that he could get the marijuana and who asked Kast to pick him up at his house.
After waiting for the appellant to get the marijuana, Kast picked the appellant up at the appellant’s house in Castleberry, and they went to the appellant’s brother’s house where Slim, the brother, retrieved marijuana from behind the couch. Either the appellant or Slim handed Kast a plastic “zip lock” bag to examine. The bags of marijuana were handled by both the appel *556 lant and Slim. The appellant put the paper bag containing the marijuana in the hatchback portion of East’s vehicle when East raised the hatchback.
On the way to Monroeville, East left his wife and son, who had gone with him, at her parents’ residence and told her to notify Deputy Gibson that he and the appellant were travelling in East’s vehicle rather than in the appellant’s. When East’s vehicle was stopped, the appellant was sitting in the front passenger seat. Sometime pri- or to the stop, East had called Gibson and was told that the agent could not come. This incident occurred about two and one-half weeks after East’s arrest.
East also testified that Gibson did not promise to help him, but told him that he would “talk” for him and help him, if he could; that he had heard nothing about the outcome of his prosecution for marijuana; and that he was currently in jail for a driving-while-intoxicated charge. He further testified that he had been convicted in October 1989 and sentenced to five years’ probation; that he had “skipped out” on probation and was declared delinquent in 1984; that he had a revocation hearing in November 1987; and that he was released from probation in January 1988.
The trial court found, based on the totality of the circumstances, that the officers had probable cause to stop and search East’s vehicle. The court specified that East would have been subject to severe consequences, including revocation of probation, if he had provided false information to Gibson; that East had clear incentive to give reliable information; that East told Gibson that the appellant had sold him a controlled substance in the past; that East told Gibson that he had arranged for the appellant to sell two pounds of marijuana at the Monroe Motor Court South, which is located just north of the intersection of Highways 84 and 21, and that they would be travelling from Castleberry, most likely on Highway 84; and that Gibson could have reasonably concluded that the two were in possession of two pounds of marijuana.
In contending that the officers did not have sufficient information to have reasonable suspicion to justify an investigatory stop of East’s vehicle, the appellant relies on Alabama v. White, — U.S. —, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), and points to the lack of sufficient corroboration of any of East’s information. The Court in White, however, was concerned with an anonymous tip, requiring more corroboration “to establish the requisite quantum of suspicion than would be required if the tip were more reliable,” i.e., from a known informant. See id. at —, 110 S.Ct. at 2416. Nevertheless, the White Court does offer guidance here because it explicitly recognized that, although the Court has adopted the “totality of the circumstances” approach to determining whether an informant’s tip establishes probable cause, Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), as in the probable cause context, “veracity,” “credibility,” and “basis of knowledge” of the informant are “relevant in the reasonable suspicion context, although allowance must be made in applying them for the lesser showing required to meet that standard,” id., — U.S. at —, 110 S.Ct. at 2415. The Court further explained the following:
“Reasonable suspicion, like probable cause, is dependent upon both the content .of information possessed by police and its degree of reliability. Both factors — quantity and quality — are considered in the ‘totality of the circumstances — the whole picture,’ United States v. Cortez, 449 U.S. 411, 417 [101 S.Ct. 690, 695, 66 L.Ed.2d 621] ... (1981), that must be taken into account when evaluating whether there is reasonable suspicion.”
Id., — U.S. at —, 110 S.Ct. at 2416. “Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.” United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) (citations omitted). Reviewing the quantity and quality of the information provided by East, we conclude that, when East and the *557 appellant- were stopped, the officers had reasonable suspicion to believe that the appellant was engaged in criminal activity and, thus, the investigatory stop was not violative of the Fourth Amendment.
“When an effort is made to show the reliability of the information, it is necessary to focus upon the nature of the information and the circumstances under which it was tendered.” 1 W. LaFave, Search and Seizure § 3.3(c) at 643 (1987). The facts support a finding of East’s reliability and, thus, a finding of his veracity, because, foremost, East was facing charges and would not have wanted to jeopardize the deal he might make with the police, and he was facing likely revocation of probation on a prior conviction, given his pending charge and his delinquent status. See Pugh v. State, 493 So.2d 388, 392 (Ala.Cr.App.1985), aff'd, 493 So.2d 393 (Ala.1986) (wherein the court stated that “[i]f [the informant is] facing charges, he would not give the police false information and jeopardize any deal that might be struck” and that “[i]f [the informant is] already on probation, it is reasonable to assume that he would not risk revocation ... by supplying false information to the police”).
Moreover, the reliability of East’s information was supported by corroboration of some of his details by the deputies. The officers independently corroborated the fact that the appellant lived in Castleberry. They also corroborated, by observing the execution of the plans for the buy, that a person (i) was travelling with East (ii) in East’s vehicle (iii) on Highway 84 (iv) westbound toward the Monroe Motor Court South (v) at a set time (though unspecified in the testimony). The officers’ observations of East’s actions corroborated East’s information, for East was following Gibson’s arrangements and East’s predictions of his and the appellant’s actions (with the exception of the change of vehicles, as to which he immediately notified the officers). Put another way, “[a] situation in which the corroboration will suffice to show veracity is that in which the informant has not been working independently, but rather has cooperated closely with the police,” 1 W. LaFave, supra, § 3.3(f) at 686. “That is, where there is ‘physical proximity and active participation in the informant’s intrigue’ by the police, so that it is not ‘independent police work’ which corroborates, but rather, ‘the police corroboration is a co-ordi-nant and intrinsic part of the informer’s operation,’ the risk of falsehood has been sufficiently diminished.” Id. (quoting State v. Gamage, 340 A.2d 1, 16 (Me.1975)) (footnote omitted). As examples of this proposition, the commentator cites cases involving an informant’s controlled purchase of narcotics. While we have no completed purchase here, we consider that this fact, in this situation, casts no serious doubt on the degree of corroboration. But for the circumstance of the agent’s inability to meet the appellant and East, a circumstance completely beyond East’s control, the buy would have taken place.
“Even when the supervision has not been [as] close [as a controlled buy], corroboration which shows that the informant was in fact in contact with the person informed upon for some period of time or that the informant was in a position to see what he claims to have seen at some critical point is particularly helpful. Again, it does not totally eliminate the possibility of falsehood, but the risk is minimized by the fact that it is at least known that the informant could have personal knowledge of what he alleges.”
1 W. LaFave, supra, § 3.3(t) (footnotes omitted). We think that the law officer’s active participation in East’s set-up is sufficient corroboration to provide, in part, factual support for the conclusion that East’s information, on this particular occasion, was reliable. See also White, — U.S. at —, 110 S.Ct. at 2416 (wherein the Court held that corroboration imparts “some degree of reliability” to other aspects of the tip).
Our finding of East’s veracity is not affected by the fact that, prior to this case, he had never supplied the police with information. See Pugh v. State, 493 So.2d at 391. “An informant need not have a ‘track record’ before his veracity can be established.” Id. (citing 1 W. LaFave, Search and Seizure, 510, 522 (1978)). See also McCray v. State, 501 So.2d 532, 533 (Ala. *558 Cr.App.1986). Moreover, the fact that East is a convicted felon does not necessarily render him unreliable. See McCray.
Kast’s basis of knowledge was obviously established by the fact that he dealt with the appellant personally. Moreover, “[b]ecause only a small number of people are generally privy to an individual’s itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual’s illegal activities.” — U.S. at —, 110 S.Ct. at 2417.
Upon the same considerations that we have based our finding that the officers had reasonable suspicion to stop Kast’s vehicle, we further find that the trial court correctly concluded that the officers had probable cause to search Kast’s vehicle. This finding dispenses with the appellant’s second argument: The officers did not have probable cause to search Kast’s vehicle.[2]
II
The appellant raises two issues regarding entrapment. First, the appellant contends that the trial testimony created facts sufficient for the trial court to determine that there was entrapment as a matter of law. Second, the appellant contends that the trial court erred by denying his motion for a judgment of acquittal and new trial when the testimony created facts sufficient for a finding of entrapment as a matter of law. Neither of these issues, however, is preserved for this court to review because they were not raised at trial.
At the end of the state’s evidence, the appellant did not raise the ground of entrapment as a matter of law when making his motion for judgment of acquittal. At the end of his evidence, the appellant renewed his motion for judgment of acquittal, but did not raise the entrapment issue. The appellant’s proposed jury instruction regarding entrapment did not suggest that entrapment had been established as a matter of law, nor did the appellant’s motion for new trial. These issues are procedurally barred because “review on appeal is limited to review of questions properly and timely raised at trial,” Dixon v. State, 476 So.2d 1236, 1239 (Ala.Cr.App.1985) (citations omitted).
*559 hi
The appellant’s third issue on appeal is whether the trial court erred by denying his request to repeat the jury instruction concerning Kast’s status for the purposes of the entrapment defense. After some deliberation, the jury inquired whether East “was classified as part of law status.” The trial court responded that that was a matter of- fact for the jury to determine from the evidence. The appellant requested that the court repeat that portion of its charge regarding Kast’s status, and the trial court refused.
The only authority the appellant cites for this proposition is A.R.Cr.P., Rule 22.2.[3] This rule, however, is permissive rather than mandatory as evidenced by the use of the word “may.” Moreover, Rule 22.2 cautions against, as the instant trial court properly noted, giving “undue prominence” to the requested instructions. See Johnson v. State, 497 So.2d 600, 602 (Ala.Cr.App.1986). We find that the trial court did not abuse its discretion in refusing to rein-struct the jury regarding Kast’s status, as doing so would have given undue prominence to that aspect of the court’s instruction.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.

. We considered all of the testimony presented prior to the introduction of the seized evidence because, at that time, the appellant renewed his objections to its introduction.

. We further note that, upon undisputed facts, the appellant could not challenge the search of Kast’s vehicle because he had no legitimate expectation of privacy in the hatchback area of Kast's vehicle and, thus, the search did not violate the appellant’s Fourth Amendment rights. See Rakas v. Illinois, 439 U.S. 128, 148-49, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978); McCraney v. State, 381 So.2d 102 (Ala.Cr.App.1980). The appellant certainly had no legitimate ownership or possessory interest in Kast’s vehicle nor did he assert a possessory interest in the seized marijuana (though this latter consideration is not determinative). In fact, before the jury, the appellant claimed not to have a possessory interest in the marijuana, and he did not testify at the suppression hearing.
We recognize that this issue of ‘‘standing’’ was neither raised by either party at any time nor recognized by the trial court. This court, in Cook v. State, 574 So.2d 905 (Ala.Cr.App.1990), in dictum, stated that, because the issue of standing was not raised by the state at trial, it was waived for the purpose of appeal. While we need not determine whether this dictum should be applied here, we note that other jurisdictions, while recognizing this general rule, have also recognized well-reasoned exceptions. See, e.g., United States v. Skowronski, 827 F.2d 1414, 1417, n. 2 (10th Cir.1987); United States v. Hansen, 652 F.2d 1374, 1381-83 (10th Cir.1981); United States v. Miller, 636 F.2d 850, 853-54 (1st Cir.1980); People v. Hamilton, 168 Cal.App.3d 1058, 214 Cal.Rptr. 596, 599 (Cal.Dist.Ct.App.1985); People v. Keller, 93 Ill.2d 432, 67 Ill.Dec. 79, 444 N.E.2d 118, 121 (1982); State v. Strayer, 242 Kan. 618, 750 P.2d 390, 394 (1988); Wilson v. State, 692 S.W.2d 661 (Tex.Cr.App.1984). Compare Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) (wherein the Court refused to address the Government's assertion, for the first time, that Steagald lacked an expectation of privacy in the place searched when the Government made contrary assertions in the courts below and had acquiesced in contrary findings by those courts); Combs v. United States, 408 U.S. 224, 227, 92 S.Ct. 2284, 2286, 33 L.Ed.2d 308 (1972) (wherein the Court remanded for further proceedings to determine whether Combs had standing where the record was "virtually barren of the facts necessary to determine” Combs’s right to contest the search and seizure). In the instant case, the record presented sufficient facts which could not have been legitimately contested, thus presenting a question of law; the prosecution neither made contrary assertions nor acquiesced in contrary findings; and the appellant could not be unfairly surprised or denied the opportunity to introduce further evidence.

. Effective January 1, 1991:
"RULE 22.2 FURTHER REVIEW OF EVIDENCE AND ADDITIONAL INSTRUCTIONS
"After the jurors have retired to consider their verdict, if they request to have any testimony repeated, or if they or any party requests additional instructions, the court may recall the jurors to the courtroom and order the testimony read or give appropriate additional instructions. The court may also order other testimony read or give other instructions, so as not to give undue prominence to the particular testimony or instructions requested. Such testimony may be read or such instruction given only after notice to the parties.” (Emphasis added.)