(111 P.3d 178)
No. 92,291

State of Kansas, *Appellee*, v. Craig D. Hill, *Appellant*.

Opinion filed May 13, 2005.

*Paul D. Cramm*, of Olathe, for appellant.

*David L. Miller*, county attorney, and *Phill Kline*, attorney general, for appellee.

Before McAnany, P.J., Malone, J., and Knudson, S.J.

Malone, J.: Craig D. Hill appeals his conviction of involuntary manslaughter which arose when he fell asleep while driving a semitrailer truck which struck and killed a road construction crew member. Hill claims there was insufficient evidence to support his conviction. We affirm.

On April 14, 2003, Hill was traveling north on U.S. Highway 69, a two-lane highway, in Miami County. He was driving a truck in the course of his job duties with Miller Paving, a construction company. Hill had delivered two backhoes to a work site in Pittsburg and was returning to Kansas City during the early afternoon.

According to Hill, he suddenly noticed a black pickup truck stopped ahead for road construction. Hill immediately began to brake, but he realized he was not going to be able to stop in time. Since there was a vehicle sitting on the right shoulder of the road, Hill swerved into the left lane, but he was faced with oncoming southbound traffic. While attempting to return to the northbound lane, Hill's truck rotated and "jack-knifed," finally sliding to a stop. Hill's truck hit the black pickup truck and also struck and killed Susan Unger, a member of the road construction crew. When Hill was approached by witnesses, he stated, "I just fell asleep."

On May 29, 2003, the State filed a criminal complaint against Hill for one count of involuntary manslaughter. At trial, Ann Smith testified that she entered northbound U.S. Highway 69 at the La Cygne exit and was driving directly behind Hill's truck. Almost immediately, she noticed the truck was weaving on the road and mentioned it to her passenger, Lisa Ruder. According to Smith, the truck veered onto the shoulder, kicking dust into the air, and then veered back onto the road. Smith testified this pattern occurred approximately eight times from the La Cygne exit to the scene of the accident, a distance of 9.7 miles. Smith further testified that a van in front of Hill's truck abruptly pulled off the road onto the shoulder so Hill could pass.

Smith used her cell phone to call 911 to report Hill's erratic driving. Smith also testified that she saw Hill's truck cross the center line directly into the path of an oncoming school bus. Hill's truck swerved back into its own lane to avoid colliding with the bus. Smith testified that she thought Hill tried to get off at the Drexel exit just prior to the accident. According to Smith, Hill's truck went over to the east side of the road at the Drexel exit and then whipped back to the left again. If the truck had not pulled back to the left, it would have hit the metal guardrail on the side of the road.

Smith saw Hill's truck jackknife and slide into the construction area. Smith got out of her vehicle and went to Unger's body lying on the road and checked for a pulse. Smith then approached Hill on the side of the road who admitted that he had fallen asleep at the wheel of his truck.

Laura Lewis testified that she was southbound on U.S. Highway 69 when she saw Hill's truck traveling northbound in her lane. Lewis took the shoulder in order to avoid a collision. Once she came to a complete stop, she saw the cab of the truck was down in a ditch. Lewis saw two men in the ditch and approached them to check on their well-being. When she asked what happened, Hill stated that he must have fallen asleep. When Lewis asked why he had not pulled over to rest, Hill said that he was going to pull over at the Drexel exit, but he must have slept through the exit.

Ricky Smith was the driver of the black pickup truck stopped at the construction site. He testified that he was driving northbound on U.S. Highway 69 and saw that he was in a construction area. He saw flashing lights and construction signs posted before 359th Street. Right before the 359th Street bridge, he saw a sign that said "flag person ahead." Another sign was posted at the rear of the vehicle where Unger was standing. Unger also held a sign that said "Stop." Ricky testified that he did not have difficulty in stopping for Unger, who was standing in the center of the northbound lane.

While Ricky was stopped, he saw Hill's truck approaching in his rearview mirror. He looked back two or three times. Ricky noticed that Hill was not slowing down, so he pulled his pickup truck as far to the right as possible. He tried to warn Unger by honking the horn and revving the motor. He heard the brakes lock up in Hill's truck. Ricky's pickup truck was struck in the rear by Hill's trailer and pushed into the ditch. After Hill exited his truck, Hill apologized to Ricky and told him that he had dozed off.

Kansas Highway Patrol Trooper Shane Hovey testified that the distance from the 359th Street bridge to the accident site was just over ½ mile. He stated that it would take approximately 30 seconds to travel that distance at 60 m.p.h. Hovey took blood samples from Hill after the accident. The blood samples were negative for alcohol or drugs.

Hill testified in his own defense. He had stopped to eat on the way back from Pittsburg, but he did not recall the name of the restaurant. Hill testified that he had intended to stop at the Drexel exit because "I was just feeling kind of tired, sitting there, driving, it's kind of boring and wanted to get out, and stretch my legs." However, Hill stated that he did not remember passing the Drexel exit. He also did not recall swerving in and out of his lane of travel before the accident. He did recall telling someone at the scene of the accident that he had fallen asleep. He said it was the only explanation for the "void in time." Hill testified that he had not logged an excessive number of hours in the days before the accident and had not stayed up late in the evenings prior to the accident.

In describing the accident, Hill said he suddenly saw a black pickup truck stopped on the highway and remembered thinking, "[T]his is going to be close." He applied the brakes, including the jake brake, but he realized he was not going to be able to stop in time to avoid a collision. Hill recalled that he had his cruise control set at 60 m.p.h., which was within the posted speed limit.

Hill testified that approximately 3 months after the accident, his physician referred him to a sleep clinic where he was diagnosed with sleep apnea. He stated that he had never experienced prior episodes of falling asleep or dozing at the wheel. When asked if he had excessive daytime sleepiness prior to the collision, Hill stated, "Well, now it appears that way, yes. At the time I just figured daytime drowsiness was normal." At the conclusion of his testimony, Hill stated that he had no idea that he was falling asleep or at risk for doing so at the time of the accident. He said he would not have driven if he had known that he was placing others at risk.

The trial court instructed the jury to consider the charge of involuntary manslaughter and also to consider the lesser included offense of vehicular homicide. The jury convicted Hill of involuntary manslaughter. The trial court sentenced him to 32 months' imprisonment. Hill timely appeals.

On appeal, Hill argues that his conviction was not supported by sufficient evidence. In support of this argument, Hill asserts that erratic driving, occasioned by the mere act of falling asleep, un-

accompanied by any other aggravating circumstances, is insufficient to sustain a conviction of involuntary manslaughter.

The standard of review for a challenge based on the sufficiency of evidence has been well established by the Kansas courts:

"When a defendant challenges the sufficiency of evidence, this court's standard of review is whether, after review of all of the evidence viewed in the light most favorable to the State, the appellate court is convinced that a rational jury could have found the defendant guilty beyond a reasonable doubt. [Citation omitted.]" *State v. Mays*, 277 Kan. 359, 377, 85 P.3d 1208 (2004).

When a verdict is challenged for insufficiency of evidence or as being contrary to the evidence, it is not the function of the appellate court to weigh the evidence or pass on the credibility of the witnesses. If the evidence, with all reasonable inferences to be drawn therefrom, when considered in the light most favorable to the State, supports the verdict, it will not be disturbed on appeal. "A jury is not bound to accept the defendant's version of the incident in question and, having convicted the defendant, it is presumed to have believed the State's evidence and to have drawn from it all inferences favorable to the State." *State v. Brunson*, 13 Kan. App. 2d 384, Syl. ¶ 2, 771 P.2d 938, *rev. denied* 245 Kan. 786 (1989).

Hill was convicted of involuntary manslaughter requiring proof of the unintentional killing of a human being committed recklessly. See K.S.A. 2004 Supp. 21-3404(a). According to K.S.A. 21-3201(c),

"[r]eckless conduct is conduct done under circumstances that show a realization of the imminence of danger to the person of another and a conscious and unjustifiable disregard of that danger. The terms 'gross negligence,' 'culpable negligence,' 'wanton negligence' and 'wantonness' are included within the term 'recklessness' as used in this code."

Hill argues that the evidence was insufficient to establish that he realized the imminence of danger prior to the accident and that he consciously and unjustifiably disregarded the danger. According to Hill, he could only have been convicted of the lesser included offense of vehicular homicide, which does not require reckless conduct as an element of the crime.

In *State v. Jenkins*, 272 Kan. 1366, 39 P.3d 47 (2002), Jenkins was convicted of two counts of involuntary manslaughter arising

from a fatal traffic accident. The State's theory was that Jenkins recklessly drove a vehicle with the knowledge that he might have an epileptic seizure. The State provided evidence of Jenkins' involvement in seven car accidents as a result of his susceptibility to seizures. The Kansas Supreme Court affirmed his convictions, noting that his prior accidents provided sufficient evidence of Jenkins' knowledge of the imminent danger he created for other drivers. The court noted that if the incident had been Jenkins' first seizure, then there would not have been evidence of recklessness. However, due to the prior incidents, the seizure was not a surprise to Jenkins. 272 Kan. at 1375.

Hill's case is clearly distinguishable from *Jenkins* and, as a result, presents a much closer question of fact on whether the evidence was sufficient to support a conviction of involuntary manslaughter. Hill was not diagnosed with sleep apnea until after the accident, and the evidence was undisputed that Hill had no prior experiences of falling asleep at the wheel. Hill is correct in asserting that if the only evidence against him was that he dozed off immediately before the accident, this could not support a conviction of involuntary manslaughter. There must have been some evidence, when considered in the light most favorable to the State, that showed a realization by Hill of the imminence of danger to others and a conscious and unjustifiable disregard of that danger, in order to support a conviction of involuntary manslaughter.

Smith's testimony was critical in order for the State to establish reckless conduct by Hill. She testified that Hill drove erratically and that his truck swerved back and forth about eight times during the 9.7-mile stretch of highway as she followed him. According to Smith, Hill's truck swerved completely onto the shoulder of the road and then back into the oncoming lane of traffic. She saw a van in front of Hill abruptly pull over to allow Hill to pass. Smith was so concerned about Hill's driving that she called 911. She saw Hill's truck cross the center line directly into the path of an oncoming school bus before returning to its lane of traffic. Smith said Hill veered to the right as if to take the Drexel exit, but he was going too fast for the exit and whipped the truck back to the left.

The evidence of recklessness can be inferred from Smith's testimony that Hill drove erratically for over 9 miles. A reasonable person could infer that Hill must have been aware that he was dozing at the wheel. Hill's driving actions show that he was having a difficult time staying awake and alert which continued for several minutes. Hill repeatedly swerved out of his lane and then attempted to correct himself. Therefore, he must have known that he was posing a danger to others on the road but he continued ahead rather than pulling over. Although Hill denied that he realized he was dozing at the wheel on the day of the accident, the jury was not required to believe Hill's version of the accident. The question of which witness' testimony to believe was clearly a question of fact reserved for the jury. The jury was instructed that it had the right to use common knowledge and experience in regard to a witness' testimony.

Furthermore, Hill's own testimony helped support a finding of reckless conduct. Hill admitted that he had wanted to stop at the Drexel exit shortly before the accident because he was feeling tired; however, he failed to do so. This provided direct evidence that Hill realized he was getting drowsy while behind the wheel of a dangerous truck on the afternoon of the accident.

A jury found that Hill drove his truck recklessly, causing the death of Unger. The testimony about the 9.7 miles of erratic driving, coupled with Hill's own admission of drowsiness, provided evidence that Hill had a conscious disregard for a known danger. When viewing this evidence in the light most favorable to the State, sufficient evidence was presented to support Hill's conviction of involuntary manslaughter.

Affirmed.