(771 P.2d 938)

No. 61,739

STATE OF KANSAS, *Appellee*, v. EDDIE BRUNSON, JR., *Appellant*.

Petition for review denied June 28, 1989.

 Opinion filed
April 7, 1989. 

*Thomas Jacquinot*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*M. Bradley Watson*, assistant district attorney, *Dennis W. Moore*, district attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before ELLIOTT, P.J., LEWIS, J., and JAMES P. BUCHELE, District Judge, assigned.

LEWIS, J.: This is an appeal by the defendant from his convictions of three counts of aggravated burglary, two counts of felony theft, and one count of misdemeanor theft. The defendant argues that his convictions should be overturned because the evidence was insufficient to support his convictions and because certain evidence was illegally seized from his car and should not have been admitted against him.

We first turn to the question of the sufficiency of the evidence. The standard of review and legal principles which apply to cases of this nature are well known. When a criminal defendant challenges the sufficiency of the evidence to support a conviction on appeal, the standard of review is whether the evidence, viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Dunn*, 243 Kan. 414, 429, 758 P.2d 718 (1988). A verdict of guilty in a criminal case will not be disturbed on appeal if there is any substantial evidence from which a jury could have found guilt beyond a reasonable doubt. *State v. Bird*, 240 Kan. 288, 299, 729 P.2d 1136 (1986), *cert. denied* 481 U.S. 1055 (1987).

We have reviewed the record in this matter. The evidence is conflicting and there is evidence in the record which, if believed by the jury, would have supported a judgment of acquittal. However, upon review of the record, we reach the conclusion that the defendant's claim concerning the sufficiency of the evidence is without merit.

The defendant was first observed by the authorities in an area where recent burglaries had taken place, and where a burglary had taken place a very short time prior to defendant being seen in the area. Although the evidence is conflicting, the record supports a conclusion that the defendant was observed driving an automobile in this area. When the automobile, which de-

fendant admits he owned and which he was observed driving on the evening in question, was searched, the authorities found a television set which had been taken from a home in the area sometime either very late the night before or very early on the morning the defendant was arrested. The search of the automobile also revealed a number of other items, including Panasonic and Quasar remote control devices, which were identified as having been taken in home burglaries in that same area several days before. The authorities also found a pry bar, a screwdriver, and a flashlight in defendant's automobile. There was evidence indicating that a pry bar may have been used to obtain access to the homes where the burglaries had taken place. The evidence indicates that when the defendant became aware that he was being observed by police officers he immediately started his car and attempted to exit the area, later abandoning his vehicle on a golf course.

The defendant testified at the trial, offering his version of why he was in the area and his explanation of how the stolen items came to be located in the trunk of his automobile. The jury chose not to believe the explanations offered by the defendant and was not required to do so. In *State v. Ridge*, 216 Kan. 73, 530 P.2d 1213 (1975), the Kansas Supreme Court said:

"The jury, of course, was not bound to accept [defendant's] version of the incident; it having convicted the defendant it is presumed to have believed the state's evidence and to have drawn from it all inferences favorable to the state."

See *State v. Satterfield*, 202 Kan. 391, 449 P.2d 564 (1969); *State v. Childs*, 198 Kan. 4, 422 P.2d 898 (1967).

In essence, the jury chose to believe the version of events offered by the State and chose to reject the version of events offered by the defendant. It was perfectly free to do so and substantial evidence exists to support its decision.

The defendant insists that the evidence offered to the jury was such that it failed to prove anyone was in the homes at the times they were burglarized and, as a result, the verdict of aggravated burglary cannot stand. We disagree. It is true that while there was no one who testified as an eyewitness to the burglaries committed by the defendant, and no one could testify to having observed the defendant gaining entrance to the homes burglarized, the State introduced evidence to prove the charges of aggravated burglary. One of the homeowners involved testified

that she discovered things missing from her home on the morning of June 16 when she awoke. She also testified that she had been at home the night before and the early morning hours when the burglary occurred, and she had given no one permission to enter her home during that time frame. In the second burglary, the homeowner testified that she discovered her home burglarized on the morning of June 8. She testified she had been home the night before and had locked her home before she went to bed. Upon awakening the next morning, she discovered the one door had been jimmied and a number of items were missing. While neither witness was able to testify with 100% certainty exactly when the burglaries occurred, a jury could infer that these burglaries took place while the homes in question were occupied. We must presume that the jury believed the evidence of the State and drew from it all favorable inferences. In applying that standard, we conclude the evidence in this case was such that a reasonable factfinder could have found, beyond a reasonable doubt, that these burglaries were committed at a time when the homes were occupied.

The defendant argues that the evidence was insufficient to show that the items found in his car were positively identified as the items which came from the homes burglarized. This argument is made regarding identification of the television remote control devices found in the defendant's automobile. The parties stipulated at the time of trial that the purloined television set found in the trunk of the defendant's automobile did, in fact, come from a home that had been burglarized. We have reviewed the entire record in this case and, while it is true that none of the witnesses could positively state that the remote control devices in question came from their homes, they did testify that they had once owned remote control devices of similar brand and description as those found in the defendant's automobile, and that their remote control devices had disappeared on the night the burglaries were committed. It was up to the jury to weigh the evidence in this case and determine whether the State had sustained its burden of proof. The jury concluded that the State had done so. There is substantial competent evidence to support this conclusion and we will not substitute our judgment for that of the jury on appeal. After reviewing all of the evidence, we are

convinced that a rational factfinder could have found defendant guilty of the crimes charged.

The defendant next argues that the search of his automobile by police was illegal and that, as a result, evidence seized from such illegal search should not have been admitted against him at the trial. The issues presented in this appeal are issues of first impression in Kansas.

The evidence indicates that the defendant, on the morning of his arrest, was sitting in his parked automobile on a public street in the Wycliff subdivision in Johnson County, which is where the burglaries involved in this case had taken place. At some point, defendant became aware of the fact that he was being observed by a police officer and, upon such observation, he started his automobile and drove away. The police followed the defendant for a brief period of time when they observed defendant's automobile leave the street and drive through a yard onto an adjoining golf course. Once on the golf course, the automobile was driven into some bushes or trees, and the police officer observed the driver exit the vehicle and run. Although the police officer was not personally acquainted with the defendant, he described the individual who ran from the vehicle as a black male, under six feet tall, with a relatively thin build. The parties did not dispute that the vehicle from which the individual exited was, in fact, owned by the defendant, Eddie Brunson, Jr., who is described as a black male, about five feet eight inches tall, with a very slight build.

Upon observing the vehicle come to rest on the golf course, and seeing the driver exit the vehicle and run, the police drove to the vehicle and found that the vehicle's lights were on, the keys were in the ignition, the gear selector was in the "drive" position, and the engine was not running. Under these circumstances, the officers did not obtain a search warrant, but simply entered the vehicle, operated the remote trunk release mechanism, and searched the trunk of the vehicle where they found the stolen TV set and the other items mentioned earlier. This evidence was seized and secured, and admitted into evidence after the trial court had heard and denied the motion of the defendant to suppress the evidence.

The parties concede that this is not a case in which a search can be justified as a good faith inventory search since the City of

Overland Park has no formal policy for inventory searches. It is also undisputed that no warrant authorizing the search of the defendant's automobile was procured, and that, under these circumstances, the State has the burden of proving that this warrantless search was not unreasonable nor a violation of the constitutional rights of the defendant.

The appellate standard of review is clear. If the findings of the trial court on a motion to suppress evidence are based upon substantial evidence, this court, on review, will not substitute its view of the evidence for that of the trial court. *State v. Chiles*, 226 Kan. 140, 144, 595 P.2d 1130 (1979); *State v. Kirby*, 12 Kan. App. 2d 346, Syl. ¶ 5, 744 P.2d 146 (1987), *aff'd* 242 Kan. 803, 751 P.2d 1041 (1988).

The defendant argues that he had a reasonable expectation of privacy in the trunk of the car and that the warrantless search of that trunk violates his Fourth Amendment rights. The State argues that, when the defendant ran from his vehicle and left it on the golf course with the lights on and the keys in the ignition, he abandoned the vehicle and thus no longer had a reasonable expectation of privacy in that vehicle and had no standing to object to the search of the vehicle. We agree with the argument of the State.

It has long been the law that individuals who abandon items of personal property will not be permitted to effectively contest the legality of the search and seizure of such abandoned items. Some cases speak in terms of individuals without standing to contest the search or seizure where they have relinquished ownership or possession of the property in question. Others have held that police retrieval of abandoned property is not a "seizure" within the meaning of the Fourth Amendment, while a third line of cases turns on the question of whether, under the circumstances, individuals who have abandoned property can do so and maintain a "reasonable expectation of privacy" of the property abandoned. See Annot., 40 A.L.R. 4th 381; 68 Am. Jur. 2d, Searches and Seizures § 9.

The United States Supreme Court in the recent case of *California v. Greenwood*, 486 U.S. 35, 100 L. Ed. 2d 30, 108 S. Ct. 1625 (1988), chose to frame the issue in terms of whether, under the circumstances, an individual had a reasonable expectation of privacy in the searched or seized material. In *Green-*

*wood*, the court held that the search and seizure of an individual's garbage without a warrant did not violate the Fourth Amendment because the defendant had exposed the contents of his garbage bags in such a manner as to have abandoned any reasonable expectation of privacy in the contents of the garbage bags. The Court stated:

"The warrantless search and seizure of the garbage bags left at the curb outside the Greenwood house would violate the Fourth Amendment only if respondents manifested a subjective expectation of privacy in their garbage that society accepts as objectively reasonable. O'Connor v Ortega, 480 US 709, 94 L Ed 2d 714, 107 S Ct 1492 (1987); California v Ciraolo, 476 US 207, 211, 90 L Ed 2d 210, 106 S Ct 1809 (1986); Oliver v United States, 466 US 170, 177, 80 L Ed 2d 214, 104 S Ct 1735 (1984); Katz v. United States, 389 US 347, 361, 19 L Ed 2d 576, 88 S Ct 507 (1967). . . .

. . . .

"It may well be that respondents did not expect that the contents of their garbage bags would become known to the police or other members of the public. An expectation of privacy does not give rise to Fourth Amendment protection, however, unless society is prepared to accept that expectation as objectively reasonable.

"Here, we conclude that respondents exposed their garbage to the public sufficiently to defeat their claim to Fourth Amendment protection. It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public. [Citation omitted.] Moreover, respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so. Accordingly, having deposited their garbage 'in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it,' [citation omitted], respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded." 100 L. Ed. 2d at 36-37.

## The Court further stated as follows:

"Individual States may surely construe their own constitutions as imposing more stringent constraints on police conduct than does the Federal Constitution. We have never intimated, however, that whether or not a search is reasonable within the meaning of the Fourth Amendment depends on the law of the particular State in which the search occurs. We have emphasized instead that the Fourth Amendment analysis must turn on such factors as 'our *societal* understanding that certain areas deserve the most scrupulous protection from government invasion.' Oliver v United States, 466 US, at 178, 80 L Ed 2d 214, 104 S Ct 1735 (emphasis added). See also Rakas v Illinois, 439 US 128, 143-144, n 12, 58 L Ed 2d 387, 99 S Ct 421 (1978). We have already concluded that society as a whole possesses no such understanding with regard to garbage left for collection at the side of a public street." 100 L. Ed. 2d at 39.

If we adopt the reasoning set forth in *Greenwood*, the issue in

this case would seem to be whether an individual who was being pursued by the police, who abandons his vehicle on a golf course and flees on foot, leaving the lights on and the keys in the ignition, and who knows that the police will soon be there, can maintain a reasonable expectation of privacy in that vehicle. We think that under the circumstances he cannot.

The states of South Carolina and Texas have both dealt with this issue. In *State v. Lemacks*, 275 S.C. 181, 268 S.E.2d 285 (1980), the South Carolina court disposed of a case in which police officers had come upon a vehicle which was parked and jutting out into the roadway. The occupant of the vehicle was either passed out or asleep and the police officers who knew the individual woke him up, talked to him, took out his keys, dropped them on the floor, and left. When the officers came back, they found that the car had been abandoned. It was still sitting in the roadway and was a hazard to traffic. They seized it, took it back to the station house, searched the trunk without having obtained a search warrant, and, in so doing, found contraband. The defendant in that case moved to suppress the evidence because of the warrantless search. The South Carolina court, in rejecting his arguments, stated on page 286:

"Appellant's vehicle was left unattended, with the keys [on the floorboard], and parked in such manner as to constitute a hazard to vehicular traffic. In so leaving his automobile, he should reasonably have foreseen that the police authorities would find it necessary, as they did, to remove the vehicle in order to eliminate its threat to public safety. By leaving the vehicle unattended with the keys readily available, appellant, in effect, left the trunk unlocked. Certainly, he, by so doing, asserted no constitutional right to privacy. Under the facts of this case, such exposure of his vehicle and its contents to the public constituted an abandonment for constitutional purposes and removed it from the protection of the Fourth Amendment to the Federal Constitution and Article 1, Section 10, of the South Carolina constitution. [Citation omitted.]"

In *Hudson v. State*, 642 S.W.2d 562 (Tex. 1982), the Texas court dealt with a situation where the defendant had been stopped by the police, who were looking for jail escapees, and asked for his permission to let them look in his car and his trunk. The defendant agreed to the search and, after the police opened the trunk, they found a box containing a number of items such as cigarettes, coffee, and Cokes. The defendant was asked about those items and indicated that they belonged to him. Shortly thereafter, he exited his vehicle, ran into the brush, and disappeared. The police then searched the automobile and identified

items found in the search as stolen property. The defendant claimed there should have been a search warrant issued and that the evidence was a product of an illegal search and seizure. The Texas court, affirming the trial court, stated:

"A warrant to search Hudson's car was never obtained so the State must show the reasonableness of the search. [Citation omitted.] The State argues that Hudson abandoned his car and therefore lost his standing to complain of an illegal search and seizure. See *Abel v. United States*, 362 U.S. 217, 80 S. Ct. 683, 4 L.Ed.2d 668 (1960).

"The Fifth Circuit has viewed the issue of abandonment in terms of whether or not the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property so that he can no longer retain a reasonable expectation of privacy with regard to it. *United States v. Colbert*, 474 F.2d 174 (5th Cir. 1973). Texas endorses the same approach in *Smith v. State*, 530 S.W.2d 827 (Tex. Cr. App. 1975). Abandonment is primarily a question of intent which may be inferred from the actions of the appellant. All relevant circumstances should be considered in determining whether or not the car was abandoned. [Citations omitted.]

"Hudson argues that he did not intend to abandon the car but that even if abandonment is found, that it was not voluntary. At the pre-trial hearing on suppression of the evidence, Hudson testified that the police found a gun in his car; they became alarmed and an officer pulled his service revolver which scared Hudson so he ran from the roadway. He also testified that he notified the Abilene Police Department of his desire to reclaim his car.

"When Hudson fled from the car, he did so without an explanation to anyone. He continued on to Mineral Wells and, even though he supposedly notified the Abilene Police of his desire to reclaim his car, he in fact made no effort to reclaim the car from the police agencies of the county where he left it. There is no indication that Hudson reconsidered his decision to leave his car with the police.

"With regard to the voluntariness of the abandonment, it should be noted that police pursuit or the existence of a police investigation does not of itself render abandonment involuntary." 642 S.W.2d at 564-65.

The Fifth Circuit Court of Appeals, in *United States v. Edwards*, 441 F.2d 749 (5th Cir. 1971), decided a case which is factually very similar to the case at hand. The State urges that we adopt the philosophy of the *Edwards* decision. In that particular case, the police observed the defendant speeding approximately 70 m.p.h. in a 50 m.p.h. zone and gave chase. The defendant refused to pull over despite the police vehicle having its siren and lights turned on. As the chase continued, speeds exceeded 100 m.p.h. After the vehicles entered the city limits, the defendant missed a turn, ran his vehicle partially up on the pavement, brought his car to a stop, jumped from the car, and ran, leaving his lights on and the engine running. The police did not obtain a

search warrant but simply removed the keys from the ignition of the car, opened the trunk, and found three five-gallon containers of untaxed whiskey. Following defendant's conviction of illegal possession and transportation of whiskey, he appealed, contending that the three five-gallon containers of whiskey should not have been admitted into evidence since they were obtained as a result of an illegal search. The Fifth Circuit Court of Appeals held that the defendant had abandoned any reasonable expectation of privacy with respect to the automobile, and stated as follows:

"A bilateral approach to this search reveals legality on two grounds. First, considering the case from the defendant's point of view, we find that by abandonment he had no Fourth Amendment right to be secure against this kind of search, at the time it was made. Second, from the Government's standpoint, we find that the search reasonably balanced the interest of the state with the defendant's civil rights in this situation.

"Defendant's right to Fourth Amendment protection came to an end when he abandoned his car to the police, on a public highway, with engine running, keys in the ignition, lights on, and fled on foot. At that point defendant could have no reasonable expectation of privacy with respect to his automobile." 441 F.2d at 751.

The court further stated:

"It is interesting to compare the cases where an owner may give another such complete and unrestricted freedom over his property that he will be held to have accepted the risk that the person will consent to a search, thus losing his right to privacy. [Citations omitted.] The circumstances here were not sufficiently compelling to make involuntary the choice to abandon his car to the pursuing officer. Having done so, Edwards accepted the risk that the officer would search the car, thus losing his right to constitutional protection." 441 F.2d at 752-53.

In dealing with the question of abandonment in terms of its effect on a defendant's Fourth Amendment rights, the court made it clear that the issue did not involve a strict property rights concept of abandonment.

"Whether or not the facts reveal a complete abandonment in the strict property-right sense is not the issue. Mr. Justice Frankfurter in Jones v. United States, 362 U.S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960), admonishes that it is unnecessary and ill-advised to import into this law of constitutional search and seizure the subtle distinctions of private property law. Mr. Justice Goldberg in United States v. Ventresca, 380 U.S. 102, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965), stresses that the Fourth Amendment is not to be applied in a hypertechnical manner but with a common sense approach.

"It seems clear by any good sound ordinary sense standard that Edwards abandoned any reasonable expectation to a continuation of his personal right

against having his car searched under these circumstances, and thus lost his Fourth Amendment rights, and we so hold." 441 F.2d at 753.

The defendant argues that *Edwards* should not apply because it is factually distinguishable. He argues that in *Edwards* the police officer who gave chase knew Edwards and was able to positively identify Edwards as the individual who abandoned the car, when no such identification was made of defendant in this case. The defendant testified that his car was abandoned on the golf course by an unknown person who forcibly took it from him and, thus, the defendant maintained an expectation of privacy in it. We do not reach the issue in the manner framed by the defendant. We agree the record shows that no absolute identification of the defendant was made; the officer in question was not acquainted with the defendant and did not know the individual who fled from the car. However, that officer gave a description of the individual who exited the car and fled that was certainly consistent with a description of Eddie Brunson, Jr. The argument of the defendant simply goes to the weight of the evidence. We believe that where an individual who looks like Eddie Brunson, Jr., and who is built like Eddie Brunson, Jr., is seen exiting a vehicle which is owned by Eddie Brunson, Jr., there is sufficient evidence to conclude that it was, in fact, Eddie Brunson, Jr., who drove and abandoned the vehicle.

We adopt the rationale of the Fifth Circuit Court of Appeals as set forth in *United States v. Edwards*, 441 F.2d 749, and hold that, under the circumstances set forth in this opinion, the defendant, when he abandoned his automobile on a golf course in Johnson County with the police in pursuit, exited that vehicle, and fled on foot leaving the lights on and the keys in the ignition, abandoned any reasonable expectation of privacy in the contents of that automobile and is in no position to object to the search of that automobile as unreasonable. As indicated by the United States Supreme Court in *California v. Greenwood*, 486 U.S. 35, an expectation of privacy does not give rise to Fourth Amendment protection unless society is prepared to accept that expectation as objectively reasonable. Here, the defendant abandoned his automobile while attempting to evade the police, who were in hot pursuit. He knew, or should have known, that when the police reached his vehicle they would search it. He left his keys in the ignition and his doors unlocked. Under these

circumstances, we do not believe society is prepared to accept an expectation of privacy in such vehicle as objectively reasonable.

We also conclude that the search can be sustained as reasonable without resort to the issue of abandonment. Only "unreasonable" searches and seizures are prohibited by the Constitution. In *Camara v. Municipal Court*, 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967), the United States Supreme Court stated: "Unfortunately, there can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails." 387 U.S. at 536-37.

The courts have concluded there is a difference in the standard to be applied to cases involving searches of automobiles as compared to searches of less mobile structures. For instance, policemen entitled to enter the property where a car is located may search the vehicle, without a warrant, in order to determine the identity of its owner. *United States v. Lipscomb*, 435 F.2d 795 (5th Cir. 1970); *United States v. Jackson*, 429 F.2d 1368 (7th Cir. 1970); *Kimbrough v. Beto*, 412 F.2d 981 (5th Cir. 1969). The court, in *United States v. Edwards*, 441 F.2d 749, concluded that the search of the vehicle under the circumstances was not unreasonable. We adopt that philosophy and reasoning, which is stated as follows:

"The record discloses essentially a combination of four factors: (1) The initial speeding which gave legality to the chase by the state trooper; (2) the increasing speed to 90-110 miles per hour in an obvious effort to outrun the police and escape arrest; (3) the abandonment of the automobile on the public right-of-way, partly on and partly off the pavement with the lights on and motor running, with the obvious knowledge that it would come into possession of the law enforcement officers; and (4) the flight from the scene on foot into the night and remaining at large.

"Confronted with this situation, it would have been unreasonable not to make some inspection of the automobile. The key being readily available, the trunk could be inspected as a part of the car within the bounds of reason. This inspection was properly a part of the on-the-scene investigation that the officer was duty bound to carry out." 441 F.2d at 754.

Since *Edwards* is factually similar, the statement above would apply to the search in this case insofar as its reasonableness is concerned. The defendant made a rather obvious effort to escape investigation by the police by driving off the street, onto the golf course, and into a tree, and then fleeing from the scene on foot, leaving his lights on and keys in the ignition. We conclude, as

did the court in *Edwards*, that, under the circumstances, it was not unreasonable to make an inspection of the vehicle and to make use of the easy, unfettered access to the trunk which defendant made available.

Affirmed.