(257 P.3d 814)

No. 103,358

STATE OF KANSAS, *Appellee*, v. ABBY L. RALSTON, *Appellant*.

Opinion filed June 10, 2011.

*Lydia Krebs*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, for appellee.

Before HILL, P.J., BUSER, J., and BRAZIL, S.J.

BRAZIL, J.: Abby L. Ralston was a passenger in a stolen vehicle that crashed while fleeing police. She appeals the denial of her motion to suppress the results of the search of her purse which was found in that stolen vehicle. We affirm.

On April 4, 2008, at approximately 1 a.m., Officer Daniel Weidner was dispatched to a suspicious character call in an apartment complex at 202 North Rock Road in Wichita, Kansas. The caller told dispatch that earlier in the day her license plate was stolen and that, at the time of the call, there was a white male "messing with" the license plate area of her vehicle. Dispatch informed Weidner that the caller stated that the man then got into a yellow Tiburon headed northbound on Rock Road.

Weidner saw a vehicle driven by a white male matching dispatch's description. Weidner had dispatch run the vehicle's tag and was informed that the tag was reported stolen. Weidner stated that there were three people in the vehicle, and although he could not see the person in the back seat well, he was certain there were two white males in the front seat. When Weidner activated his lights to stop the vehicle, the vehicle sped away immediately. As Weidner was pursuing the vehicle, it hit a dip in the road, causing it to crash through a fence and into a tree.

Weidner pulled his patrol vehicle to the side of the road directly behind the accident scene where he saw two white males exit the vehicle, and he ran after them. The two men jumped a fence. As Weidner ran past the scene pursuing the two men, he saw an individual wearing light-colored clothing in the back seat of the Tiburon. By the time Weidner got to the fence, he had lost sight of the two men. He scanned the area and saw someone running on the street just to the east of his location. He radioed dispatch for assistance setting up a perimeter to attempt to contain the suspects.

Weidner began walking back to the scene of the accident when he saw a white female, later identified as Ralston, wearing light-colored clothing walking towards him away from the accident scene. He asked her to identify herself and asked her who was driving the car. Ralston did not identify herself at that point. Weidner noted that she looked disturbed and shaken up. He also noted

that the impact of the crash was violent. Ralston stated that she did not need an ambulance.

Ralston did not immediately tell Weidner she had been in the vehicle; however, Weidner was fairly confident that she had been a passenger, due to the location, time of evening, and the light-colored clothing she was wearing. Initially, she said that she was walking from a QuikTrip located approximately 3 miles west of the accident; however, Weidner noted that the direction she was going did not correspond to her statement.

Ralston and Weidner walked back to the scene together, and at that point, Sergeant Hatter was present. Weidner asked Hatter to stand with Ralston, who at this point had only given Weidner her first name, while Weidner cleared the vehicle to ensure that there were no injured people and to see if there was any identification in the vehicle. Weidner noted multiple dark-colored backpacks and a purse that had been left in the vehicle. He brought the purse to Hatter so that Hatter could see if there was identification inside the purse. Hatter found a positive identification for Ralston and also a pouch, which contained a substance that field tested as being methamphetamine. Hatter testified that her report stated that Ralston claimed ownership of the purse; however, Hatter did not independently recall this and could not remember when Ralston claimed ownership.

Officer Shelton arrived at the scene and Weidner asked him to run the vehicle identification number of the Tiburon and the two license plates, one from the back of the vehicle and one found inside the vehicle. Shelton confirmed dispatch's information that the license plate on the back of the Tiburon had been reported stolen and that the license plate inside the Tiburon belonged to the Tiburon, which had also been reported stolen.

Ralston testified that she gave Weidner her first and last name when they met. Ralston testified that at the scene of the accident, she told Weidner she was not a passenger in the vehicle but had been at QuikTrip. At the suppression hearing, she admitted that she was in the accident and was fairly "banged up," and she remembered complaining about her back and tailbone because of

the impact of the crash. Ralston testified that she told the officers that none of the bags inside of the car belonged to her.

Ralston was charged with possession of methamphetamine contrary to K.S.A. 65-4160(a). Ralston filed a motion to suppress her statements and the evidence obtained during the search of a silver cigarette box found in a blue fabric pouch in Ralston's purse, which she left in the back seat of the Tiburon. The district judge overruled the motion and explained his ruling on the record. A bench trial was held, and Ralston was found guilty of possession of methamphetamine.

### *The motion to suppress*

On appeal, Ralston does not challenge the portion of the district court's decision overruling the motion to suppress her statements. An issue not briefed by the appellant is deemed waived and abandoned. *State v. Martin*, 285 Kan. 994, 998, 179 P.3d 457, *cert. denied* 555 U.S. 880 (2008).

Ralston argues that the officer should have obtained a warrant prior to searching the vehicle and the contents of her purse and the State failed to present sufficient evidence that Ralston intended to abandon her purse in the vehicle.

### *Did Ralston abandon her purse, depriving her of standing?*

The district court concluded that Ralston abandoned her purse. Our Supreme Court treats the issue of whether a defendant abandoned property as a standing issue. See *State v. Grissom*, 251 Kan. 851, 902-07, 840 P.2d 1142 (1992). Standing is an issue of law. *State v. Ernesti*, 291 Kan. 54, 60, 239 P.3d 40 (2010).

"[A] defendant cannot object to the seizure of evidence without proper standing to challenge the validity of the search. On the issue of standing, the burden is on the defendant to show an expectation of privacy in the property searched. A defendant may testify at a suppression hearing to establish his or her standing to challenge a search without jeopardizing his or her defense at trial. *State v. Cruz*, 15 Kan. App. 2d 476, 484, 809 P.2d 1233, *rev. denied* 249 Kan. 777 (1991); see *State v. Sumner*, 210 Kan. 802, 803-04, 504 P.2d 239 (1972)." *State v. Gonzalez*, 32 Kan. App. 2d 590, 593, 85 P.3d 711 (2004).

In *Grissom*, 251 Kan. at 902, our Supreme Court said that it has long been the law in Kansas that an individual who abandons prop-

erty is not permitted to contest the legality of the search and seizure of the property. The *Grissom* court, quoting *State v. Brunson,* 13 Kan. App. 2d 384, Syl. ¶¶ 3, 4, 5, 771 P.2d 938, *rev. denied* 245 Kan. 786 (1989), said:

" 'The warrantless search of an automobile which has been abandoned by its owner will violate the Fourth Amendment only if the defendant manifested a subjective expectation of privacy in the automobile and its contents that society accepts as objectively reasonable.'

" 'One's personal right to Fourth Amendment protection of property against search and seizure is lost when that property is abandoned, absent a manifested reasonable expectation of privacy.'

" '[I]n determining the continued existence of Fourth Amendment property rights, whether the facts reveal a complete abandonment of an automobile in the strict property rights sense is not the issue. The issue is whether, by any good, sound, ordinary sense standard, the defendant abandoned any reasonable expectation to a continuation of his personal right against having his car searched.' [Citation omitted.]" *Grissom,* 251 Kan. at 903-04.

In 1995, a panel of this court stated that "[f]or criminal law purposes, the concept of abandonment of property has two components: (1) A defendant must intend to abandon the property; and (2) the defendant must freely decide to abandon the property and the decision must not merely be the product of police misconduct." *State v. Likins,* 21 Kan. App. 2d 420, 426, 903 P.2d 764, *rev. denied* 258 Kan. 861 (1995). The court went on to note:

" 'Thus, abandonment is a question of intent and exists only if property has been voluntarily discarded under circumstances indicating no further expectation of privacy.' 68 Am. Jur. 2d, Searches and Seizures § 6, p. 645. Further, we cannot assume that a disclaimer of ownership always constitutes an abandonment for Fourth Amendment purposes. 1 LaFave, Search and Seizure § 2.6(b), p. 474 (2d ed. 1987)." 21 Kan. App. 2d at 426.

In this case, the district court found that Ralston "clearly meets the two prongs that she intended to abandon the property and she freely decided to abandon that property, without any coercion by the police." The court continued:

"Not only does she deny being in the car, she denies ownership of the purse and all property in the car, and even when she is aware that the purse is gonna be searched, because at that time Weidner gives the purse to Hatter, Ralston is right in the presence of Hatter, she still maintains no—she makes no statement saying, That purse is mine and you can't search it."

On appeal, Ralston argues that her case is more analogous to *Likins*, where intent to abandon property was not found than *Grissom* and *Brunson*, where the courts found intent to abandon.

The facts of Ralston's case, however, are similar to those she attempts to distinguish herself from and very different from those presented in *Likins*. In *Brunson*, the court concluded that the defendant, who "abandoned his automobile on a golf course . . . with the police in pursuit, exited that vehicle, and fled on foot leaving the lights on and the keys in the ignition, abandoned any reasonable expectation of privacy in the contents of that automobile." 13 Kan. App. 2d at 391-95. Similarly, the vehicle Ralston was a passenger in crashed into a tree and two male occupants were seen running from the scene of the accident. Ralston left the vehicle, was seen walking away from the accident, and then denied being a passenger in the vehicle.

Moreover in *Grissom*, the court held that the defendant, who parked on private property without authorization, slept in a field across the street, did not attempt to intervene when the vehicle was towed or go to the police station to claim the car, and subsequently stole another car to avoid arrest, had abandoned the car and did not have an objectively reasonable expectation of privacy in the seized car. 251 Kan. at 905-07. Similarly in this case, the district court made the factual finding that Ralston made no claim to the ownership or possession of the purse. Although Ralston did identify her purse at some point in time, it is clear from Ralston's own testimony at the hearing that she initially denied having any property in the vehicle.

The *Likins* case, in contrast, was based on a distinction between possession and ownership of a vehicle, where the defendant was driving his friend's vehicle and told an officer that he could not grant permission to search another's car.

Under the circumstances of this case, Ralston's expectation of privacy in her purse was not objectively reasonable, and she therefore lacked standing to challenge the search. The district court's decision finding that Ralston had abandoned her purse is affirmed.

*Does Ralston's status as a passenger in a stolen vehicle deprive her of standing?*

The State additionally argues that Ralston lacks standing to challenge the search of the stolen vehicle and her purse found in the vehicle, based on the vehicle being stolen.

The district court did not base its decision on the car's stolen status; however, the State raised this issue at the motion to suppress hearing, and "[s]tanding is a component of subject matter jurisdiction and may be raised for the first time on appeal." See *Ernesti*, 291 Kan. at 60 (citing *Mid-Continent Specialists, Inc. v. Capital Homes*, 279 Kan. 178, 185, 106 P.3d 483 [2005]).

The State argues that Ralston lacked standing to challenge the search and seizure of items from the stolen vehicle. Because Ralston was a passenger in the vehicle, the first step in the analysis is to note that the general rule for passengers provides that "[u]nder the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights, a passenger in a vehicle is seized when a law enforcement officer stops the vehicle through a show of authority and the passenger does not flee." *State v. Smith*, 286 Kan. 402, Syl. ¶ 1, 184 P.3d 890 (2008). In this case, although Ralston did leave the scene initially and, therefore, was arguably not seized at that time, Weidner testified that he asked Ralston to return to the scene and asked Hatter to keep an eye on Ralston. Weidner testified that Ralston was being detained because he thought she had been in the car that had just crashed. Therefore, as a panel of this court recently noted, for purposes of this analysis, because Ralston was seized at the relevant point in time and no incriminating evidence was obtained before then, this court need not determine whether she was seized when the police attempted to stop the vehicle, which then crashed. See *State v. Reiss*, 45 Kan. App. 2d 85, 244 P.3d 693 (2010).

Next, we must determine whether a passenger in a stolen vehicle has standing to challenge the search of the vehicle. The State quotes from *State v. Wickliffe*, 16 Kan. App. 2d 424, Syl. ¶ 3, 826 P.2d 522 (1992), where a panel of this court found that "a thief acquires no legitimate ownership or possessory interest in a stolen

vehicle." The State argues that pursuant to *Wickliffe*, Ralston has no standing to challenge the search. Two issues with the State's contention must be addressed. First, does the *Wickliffe* holding extend to a passenger in a stolen vehicle, and if so, does the *Wickliffe* holding extend to the search of Ralston's purse?

Beginning with whether *Wickliffe's* holding extends to a passenger in a stolen vehicle, a review of the *Wickliffe* panel's holding is helpful:

"The basic test to determine whether a person has standing to challenge the validity of the search is not whether the person had a possessory interest in the items seized, but whether he had a legitimate expectation of privacy in the area searched. [Citations omitted.]

"It is clear that a person who does not have an ownership or possessory interest in the property searched has little legitimate expectation of privacy in that property. *State v. Strayer*, 242 Kan. 618, 620, 750 P.2d 390 (1988); *State v. Sanders*, 5 Kan. App. 2d [189] at 193-95 [, 614 P.2d 998 (1980)]. Based on Kansas case law, the lack of ownership or possessory interest is dispositive on the issue of standing." *Wickliffe*, 16 Kan. App. 2d at 429.

No Kansas court has addressed whether a passenger in a stolen vehicle has standing to challenge the validity of the search; however, Search and Seizure, a treatise on the Fourth Amendment, addresses this issue and states:

"A person's standing depends upon *his* justified expectation of privacy, and this is not determined upon the basis of what the police believe or even necessarily upon the actual facts. For example, *a passenger in a vehicle might have standing notwithstanding the car's actual character as stolen property if the passenger believed that the person giving him the ride had lawful possession of it*." (Emphasis added.) 6 LaFave, Search and Seizure §11.3(e), p. 204 (4th ed. 2004).

Pursuant to this rationale, *Wickliffe* extends to a passenger if the passenger was aware that the vehicle was stolen.

The record is nearly void of evidence regarding Ralston's knowledge of whether the vehicle was stolen. The only time that this issue was addressed was during cross-examination by the State, where Ralston testified that she did not know why the two men were running from the police that night. Ralston's attorney objected to this testimony, and the district court sustained the objection and ordered the answer stricken from the record. Because on the issue of standing, the burden is on the defendant to show an

expectation of privacy in the property searched, Ralston has failed to meet this burden with respect to the vehicle as she presented no evidence that she was unaware that the vehicle was stolen.

Because under the facts of this case, Ralston lacks standing to challenge the search of the stolen vehicle, we must determine whether she also lacks standing to challenge the search of her purse contained in the vehicle. The State argues that *Wickliffe* extends to Ralston's purse. In *Wickliffe*, the panel stated that an automobile thief has neither an ownership nor a possessory interest in the property stolen, and "[a]s a result, that individual cannot have a legitimate expectation of privacy in the vehicle stolen and does not have standing to object to the search of the vehicle and seizure of items therefrom." 16 Kan. App. 2d 430. Therefore, pursuant to *Wickliffe*, Ralston lacks standing to challenge the search of her purse, an item seized from the stolen vehicle.

Ralston argues that pursuant to *State v. Stubby*, No. 95,229, unpublished opinion filed November 22, 2006, *rev. denied* 283 Kan. 933 (2007), she has standing to challenge the search of her purse. In *Stubby*, a panel of this court found that although "the defendant has the burden of showing an expectation of privacy by establishing ownership or possession of the property searched," the panel had "absolutely no problem whatsoever in finding that Stubby established ownership of the purse and that she reasonably had an expectation of privacy with respect to the contents of her purse." Slip op. at 4. *Stubby* is distinguishable from this case, however, because in *Stubby* the defendant's property was not in a stolen vehicle.

Even if we were to find Ralston did not abandon her purse, she still fails to meet her burden of establishing that she had standing to challenge the search of her purse because the vehicle she was traveling in was stolen, and no evidence was presented that Ralston was unaware of this fact (vehicle stolen) that was not stricken from the record by her own counsel's objection.

Because Ralston does not have standing to challenge the search of her purse, we need not address Ralston's argument that there was no exception to the warrant requirement authorizing the State

to search Ralston's purse or the State's alternative argument that the methamphetamine would have been inevitably discovered.

Affirmed.