NOT DESIGNATED FOR PUBLICATION

No. 120,028

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES L. THORNTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Opinion filed May 15, 2020.
Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MALONE and GARDNER, JJ.

PER CURIAM: A jury convicted James Lawton Thornton of possession of marijuana, methamphetamine, and drug paraphernalia. On appeal, Thornton argues that the district court erred by denying his motion to suppress evidence seized during and after an illegal search of his backpack. He also argues that the district court erred in failing to give a unanimity instruction. We agree that Thornton's backpack was searched illegally, so the district court erred in admitting the syringe discovered during that search. But the rest of the evidence was properly admitted, and the jury was properly instructed. We find no reversible error.

1

*Factual and Procedural Background*

Officer Peter Kerby pulled Thornton over while Thornton was riding a bicycle on a December evening after Kerby saw him leaving a known drug house. Although Thornton was holding a lantern as he rode, Kerby initiated the stop because he did not see any lights or reflectors on Thornton's bike, as were required by a Lawrence city ordinance. Kerby attempted to pull Thornton over but it became clear he was not going to stop. So Kerby followed Thornton with his patrol lights and spotlight on before edging Thornton off the road with his patrol car. Still, Thornton dodged Kerby's car and continued pedaling past him. Kerby then drove forward and blocked Thornton from riding further, stopping him around 75-100 feet from where he had first tried to stop him. Kerby removed a large machete from the side of Thornton's backpack, and placed him in handcuffs.

Once Thornton was cuffed, Kerby patted him down and found a pocket knife in Thornton's pocket. Once the backup officer, Officer Matthew Roberts, arrived, Kerby took Thornton's backpack and placed it on the hood of his car. Officers learned that the bicycle Thornton had been riding was stolen, and that Thornton had an active warrant for "some kind of drug charge" out of Franklin County for his arrest. Kerby then arrested Thornton.

When Roberts asked Thornton if he had anything on him that he needed to be aware of, Thornton responded that he might have a marijuana pipe in his pocket. Roberts searched Thornton and found a blue glass pipe.

Kerby searched Thornton's backpack and found a pair of wire cutters and an orange-tipped syringe. Kerby and Roberts then retraced Thornton's path to look for any discarded evidence. On the ground near where Kerby first tried to stop Thornton,

2

they found a single plastic baggie of marijuana that also contained an individually wrapped, small amount of methamphetamine.

The State charged Thornton with possession of methamphetamine, marijuana, and drug paraphernalia. Before trial, Thornton moved to suppress all statements and evidence, arguing they had been obtained as a result of an illegal arrest. But the district court denied the suppression motion. Specifically, the district court found that Thornton's statement regarding the pipe in his pocket did not need to be suppressed even though he was not read his *Miranda* warnings because Roberts asked the question of whether Thornton had anything in his pockets as a legitimate safety concern for himself. The district court also held that Thornton did not have standing to ask that the baggie of drugs be suppressed because he denied possession of the drugs and they were found on the ground. The district court did not make any specific findings with regard to the evidence found in the backpack.

A jury found Thornton guilty on all three counts. The district court sentenced Thornton to eighteen months in prison and twelve months of postrelease supervision. Thornton timely appealed.

*Did the District Court Err in Denying Thornton's Motion to Suppress?*

Thornton first argues that the district court erred in denying his motion to suppress the syringe discovered in his backpack because the search of his backpack was illegal—it did not fall within any exception to the warrant requirement. He then asserts that the baggie of drugs was found as a result of the illegal search of his backpack, so the drugs must be suppressed as fruit of the poisonous tree.

The State agrees that the district court erred in failing to suppress the syringe. Nonetheless, it argues that the district court properly admitted the drugs because they were not found as a result of the illegal search of the backpack.

Our standard of review for a district court's decision on a motion to suppress has two components. We review the district court's factual findings to determine whether they are supported by substantial competent evidence. Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019). In reviewing the factual findings, we do not reweigh the evidence or assess the credibility of witnesses. We then review the ultimate legal conclusion using a de novo standard. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). We use that same de novo standard in reviewing the existence of standing. *Kincaid v. Dess*, 48 Kan. App. 2d 640, 646-47, 298 P.3d 358 (2013).

*Discovery of the Syringe*

Officers had no warrant to search Thornton's backpack, where they found the syringe. The Fourth Amendment to the United States Constitution applies to the states through the Constitution's Fourteenth Amendment. *State v. Baker*, 306 Kan. 585, 589, 395 P.3d 422 (2017). It and Section 15 of the Kansas Constitution Bill of Rights protect Kansas citizens from "unreasonable searches and seizures." 306 Kan. at 589-90. A warrantless search or seizure is presumptively unreasonable unless that search or seizure falls within certain recognized exceptions to the search warrant requirement. *State v. Cleverly*, 305 Kan. 598, 604, 385 P.3d 512 (2016). The State carries the burden of proving one of the exceptions applies. *State v. Overman*, 301 Kan. 704, 710, 348 P.3d 516 (2015). If no exception applies, a judicially created remedy called the exclusionary rule usually prevents the State from using evidence obtained in an illegal search against the victim of the search. *State v. Pettay*, 299 Kan. 763, 768-69, 326 P.3d 1039

(2014) (citing *Illinois v. Krull*, 480 U.S. 340, 347, 107 S. Ct. 1160, 94 L. Ed. 2d 364 [1987]).

To the district court, to justify the officer's search of the backpack, the State invoked the search incident-to-lawful-arrest exception to the warrant requirement. Under that exception, a law enforcement officer making a lawful arrest can lawfully search the arrestee and the area within the arrestee's immediate control without getting a warrant. *State v. Torres*, 308 Kan. 476, 484, 421 P.3d 733 (2018). This exception serves two purposes:  (1) protecting officer safety by allowing a search for weapons an arrestee could reasonably access; and (2) preventing an arrestee from destroying or concealing evidence of the crime of arrest. See *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969); *Torres*, 308 Kan. at 483.

On appeal, the State concedes that the search incident-to-lawful-arrest exception does not apply. We agree. The record shows that when Kerby searched Thornton's backpack, he was not searching for evidence of any crime Thornton was arrested for—failing to yield or fleeing and eluding. And Kerby never suggested that he searched Thornton's backpack because he thought he would find evidence of a crime.

Nor do the facts show that Kerby searched the backpack for protective purposes. Kerby searched Thornton's backpack after he had removed it from Thornton, had placed it on the hood of the police car, and had handcuffed Thornton. So Thornton could not have accessed the backpack at the time it was searched. Under these circumstances, the search incident-to-lawful-arrest exception to the warrant requirement does not apply. See *State v. Ritchey*, 56 Kan. App. 2d 530, 536, 432 P.3d 99 (2018) (finding the search incident-to-lawful-arrest exception did not apply when officers were not searching Ritchley's purse for protection or to preserve evidence, and Ritchley had no access to her purse at the time.)

5

The State does not assert that any other exception to the warrant requirement applies to the search of the backpack. In fact, the State concedes that because it did not present any evidence regarding Lawrence jail's search policies, it cannot now claim that the inevitable discovery exception applies. We agree. See *Baker*, 306 Kan. at 592-94 (requiring evidence about inventory policy and procedure to claim inevitable discovery through inventory search). Thus, the district court erred in failing to suppress the syringe obtained in the illegal search of Thornton's backpack.

*Discovery of the Pipe*

Officers also found a pipe in Thornton's pants. Roberts asked Thornton after his arrest if he had anything on him that Roberts needed to be aware of. Thornton replied that he may have a marijuana pipe in his pants pocket. Roberts then searched Thornton and found a blue glass pipe that Roberts testified smelled like marijuana. Neither party argues that this pipe was found in or was tainted by an illegal search, and, as Thornton tacitly concedes, the pipe could be considered drug paraphernalia. So, although the syringe should have been suppressed, the pipe was lawfully admitted as evidence that Thornton possessed drug paraphernalia.

*Discovery of the Baggie of Drugs*

Thornton next argues that the baggie containing marijuana and methamphetamine was tainted by the illegal search of the backpack. Thornton contends the discovery of the drugs was derived from illegal search of his backpack, so the drugs should be suppressed as fruit of the poisonous tree. See *Wong Sun v. United States*, 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 [1963]).

The State responds that the drugs found in the baggie are not fruit of the poisonous tree because they were not found as a result of the illegal search of Thornton's backpack.

It cites *State v. Poulton*, 286 Kan. 1, Syl. ¶ 2, 179 P.3d 1145 (2008), noting that the exclusionary rule bars the admission of evidence obtained "as a result of" the illegal conduct. The State contends the discovery of the baggie is neither a direct nor an indirect result of the illegal search of the backpack but is a "separate and distinguishable event."

As we detail below, Thornton's suppression motion did not argue that the drugs should be suppressed as fruit of the poisonous tree, so we will not decide for the first time on appeal. "Issues not raised before the district court generally cannot be raised on appeal." *State v. Foster*, 290 Kan. 696, 702, 233 P.3d 265 (2010). Both the fruit of the poisonous tree and the attenuation doctrine argued by the State involve fact-intensive questions best addressed by the district court.

Curiously, neither party mentions the rationale the district court used to decide this issue—Thornton's lack of standing. The district court properly noted that the thrust of Thornton's motion to suppress challenged only the initial stop and the admissibility of Thornton's statements. The motion to suppress made no argument about the syringe or the baggie of drugs. It did allege an illegal search incident to arrest and concluded "[t]he seizure and arrest of Mr. Thornton was a violation of the 4th and 14th Amendment to the United States Constitution. Therefore, the scope and extent of the search and seizure was unreasonable and any evidence obtained due to or after the search is fruit of the poisonous tree." Yet the motion did not allege that the search of Thornton's backpack was illegal or argue that the drugs in the baggie should be suppressed as fruit of the poisonous tree.

Thornton's counsel, during argument at the close of the suppression hearing, confirmed the narrowness of his motion, stating: "So I guess the only issue that comes here would be my client's statement that he made to Officer Roberts, and I ask that be suppressed." The Prosecutor echoed that understanding: "Judge, I guess the

7

things at issue here are any statements that the defendant made to Officer Kerby or Officer Roberts."

Nonetheless, the district court covered all the bases. After finding Thornton's arrest to be legal and his statements legally obtained, the district court addressed the baggie of drugs. It found Thornton lacked standing to seek to suppress them:

> "And then thereafter, the baggie that is found, it wasn't on Mr. Thornton, and I don't think he even has any standing to ask for that suppression since he denies ownership and it wasn't on him; and in looking at the affidavit, I am not even sure the affidavit even mentions the syringe and the backpack, so I don't know where that even plays into this. But your motion to suppress is denied."

Both parties ignore this finding that Thornton lacked standing to seek suppression of the baggie. Yet the district court's analysis is correct.

A defendant may not object to a seizure if that defendant lacks "proper standing to challenge the validity of the search." *State v. Talkington*, 301 Kan. 453, Syl. ¶ 10, 345 P.3d 258 (2015). Standing is a "''party's right to make a legal claim or seek judicial enforcement of a duty or a right.'''" *In re Adoption of T.M.M.H.*, 307 Kan. 902, 908, 416 P.3d 999 (2018). To establish standing to challenge a search, Thornton has the burden of establishing an "expectation of privacy in the property searched." 301 Kan. 453, Syl. ¶ 10. A defendant must prove not only that he or she has "a subjective expectation of privacy in the area searched" but also that the alleged privacy expectation is "objectively reasonable." *State v. Dannebohm*, 308 Kan. 528, 533-34, 421 P.3d 751 (2018); See *Smith v. Maryland*, 442 U.S. 735, 740, 99 S. Ct. 2577, 2580, 61 L. Ed. 2d 220 (1979) (quoting *Katz v. United States*, 389 U.S. 347, 351, 353, 361, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967).

8

A defendant may not contest the legality of a search or seizure if the property searched or seized has been abandoned. *State v. Ralston*, 45 Kan. App. 2d 1024, Syl. ¶ 2, 257 P.3d 814 (2011). The Fourth Amendment's protections against unreasonable searches and seizures cease when a defendant abandons property, ""'absent a manifested reasonable expectation of privacy.'"" 45 Kan. App. 2d 1024, Syl. ¶ 4.

Thornton shows no subjective expectation of privacy in the baggie of drugs—he denies having possessed it. He did not seek to preserve the baggie of drugs as private but threw them away in a public area. Nor does he show a reasonable expectation of privacy in the location in which officers found it—a street or yard of another open to public view and access—a place that Thornton had no right to exclude others from. He fails both counts of the standing inquiry.

The facts in *Ralston* are much like those here. There, the defendant was a passenger in a stolen vehicle involved in a police pursuit. After the vehicle crashed, the defendant left her purse, which contained methamphetamine, in the car and fled the scene. On appeal, this court found that defendant had abandoned her purse so she lacked standing to contest the search. 45 Kan. App. 2d at 1029. In reaching this conclusion, the panel found that the defendant's "expectation of privacy in her purse was not objectively reasonable, and she therefore lacked standing to challenge the search." 45 Kan. App. 2d at 1029.

The same is true here. By dropping the baggie of drugs in a street or someone else's yard and then fleeing, Thornton abandoned the drugs and thus lacks standing to challenge their admission. See *State v. Kimberlin*, 267 Kan. 659, 663-66, 984 P.2d 141 (1999) (no reasonable expectation of privacy in trash placed near the street for collection); *State v. Brunson*, 13 Kan. App. 2d 384, 389, 771 P.2d 938 (1989) (no reasonable expectation of privacy in a vehicle abandoned on a golf course);

9

*State v. Berry*, 223 Kan. 102, 105-06, 573 P.2d 584 (1977) (no reasonable expectation of privacy in a bush outside of a motel room which hid a bag filled with drugs); *State v. Ford*, No. 119,698, 2019 WL 2147687, at *5 (Kan. App. 2019) (unpublished opinion) (By purposely leaving drugs in a parking lot accessible to the public, the person who left them gave up any reasonable expectation of privacy in that property, even if the property itself was not abandoned). These cases show that if the officers had illegally searched the baggie of drugs, Thornton would have lacked standing to challenge that search. The standing analysis is no different when, as here, the baggie is alleged to have been tainted by a prior illegal search.

But even assuming standing, we would find no error in the admission of the plastic baggie containing the marijuana and the methamphetamine because the evidence at the suppression hearing sufficiently established that the police officers' discovery of the drugs did not flow from the illegal search of Thornton's backpack. As the State's brief points out, Kerby testified at the suppression hearing that he had always planned on retracing Thornton's route to see if he could find any incriminating evidence that Thornton may have thrown on the ground based on Thornton's flight from the officers and the initial discovery of the marijuana pipe on Thornton's person. Thus, the undisputed evidence at the suppression hearing supports a finding that the discovery of the drug evidence was not the fruit of the poisonous tree of the illegal search of the backpack. See *Poulton*, 286 Kan. at 5-6, (citing *Wong Sun v. United States*, 371 U.S. at 487-88).

Thornton also makes a cursory argument that reversal is necessary because the State "repeatedly linked the discovery of the syringe with its circumstantial claim that the drugs found on the ground were [his]." But he cites no authority in support of this conclusory spillover effect argument. We deem it abandoned. See *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015) ("When a litigant fails to adequately brief an issue it is deemed abandoned.").

10

*Did the District Court Commit Clear Error by Failing to Give an Unanimity Instruction?*

Thornton next argues that the district court committed clear error by failing to give an unanimity instruction. He argues that the State presented two legally separate acts that the jury could reasonably have found constituted the crime of possession of drug paraphernalia. The State responds that this is not a multiple acts case.

Thornton concedes that he failed to object or request a unanimity instruction. So we apply a clearly erroneous standard of review. See K.S.A. 2017 Supp. 22-3414(3); *State v. Butler*, 307 Kan. 831, 845, 416 P.3d 116 (2018). Under this standard, reversal is required only if an instruction error occurred and the panel is firmly convinced that the giving of the instruction would have made a difference in the verdict. See *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018).

A defendant is entitled to a unanimous jury verdict. K.S.A. 22-3421; *State v. Santos-Vega*, 299 Kan. 11, 18, 321 P.3d 1 (2014).

> "When a case involves multiple acts, any one of which could constitute the crime charged, the jury must be unanimous in finding which specific act constitutes the crime. See *State v. De La Torre*, 300 Kan. 591, 595, 331 P.3d 815 (2014). To ensure jury unanimity in these cases (known as multiple acts cases), the State must elect which act it is relying upon for the charge, or the court must instruct the jury that it must unanimously agree on the specific act constituting the crime charged. *State v. Akins*, 298 Kan. 592, 618, 315 P.3d 868 (2014); *State v. Voyles*, 284 Kan. 239, 244-45, 160 P.3d 794 (2007)." *State v. Hale*, No. 118,152, 2018 WL 4939423, at *8 (Kan. App. 2018) (unpublished opinion).

When analyzing a jury unanimity issue, we follow a three-part test. *De La Torre*, 300 Kan. at 596. First, we determine whether this is a multiple acts case. "The threshold question is whether jurors heard evidence of multiple acts, each of which could have

supported conviction on a charged crime." 300 Kan. at 596 (citing *State v. King*, 299 Kan. 372, Syl. ¶ 1, 323 P.3d 1277 [2014]). This is a question of law over which we exercise unlimited review. *Santos-Vega*, 299 Kan. at 18. If we find this is not a multiple acts case because the defendant's conduct was unitary, then the analysis ends. See *Voyles*, 284 Kan. at 244. Second, if we decide that multiple acts were involved, we must then decide whether error was committed either because the district court failed to instruct the jury to agree on the specific act for each charge or because the State failed to inform the jury which act to rely on during its deliberations. *State v. King*, 297 Kan. 955, 979, 305 P.3d 641 (2013). Third, we evaluate any error found for harmlessness. 297 Kan. at 979-80.

Thornton was charged with possession of drug paraphernalia under K.S.A. 2016 Supp. 21-5709(b)(2). The State presented evidence that Thornton possessed the syringe and the marijuana pipe. Thornton argues that because some of the jurors could have based his drug paraphernalia conviction on the glass pipe, while other jurors could have based that conviction on the illegally-admitted syringe, the jury had evidence of multiple acts that could have supported the one possession charge.

The State counters by citing *State v. Sanborn*, 281 Kan. 568, 132 P.3d 1277 (2006) and *State v. Schnoover*, 281 Kan. 453, 133 P.3d 48 (2006). In both of those cases, our Supreme Court held that although multiple items of evidence were used to prove various possession crimes, neither case involved multiple acts. Instead, both involved a single act of possessing drug paraphernalia. *Sanborn*, 281 Kan. at 570-71; *Schnoover*, 281 Kan. at 507-08. In *Sanborn*, the court specified that "[a]lthough both counts against Sanborn include multiple items of evidence, they do not include multiple acts because the items are not factually distinct. All of the items are drug paraphernalia." 281 Kan. at 571. Thus, our Supreme Court held that an unanimity instruction was not required. 281 Kan. at 571.

The same analysis applies here. The State admitted two separate items of evidence to support the charge of possessing drug paraphernalia—the pipe and the syringe. Those items do not include multiple acts because they are not factually distinct—both are drug paraphernalia. The district court did not err in failing to give an unanimity instruction.

Affirmed.